# Craig *versus* The City of Philadelphia.

1. The assessment of a tax upon real estate in rural districts, according to the frontage rule of valuation, for the improvement of a public highway, is unconstitutional: Seely *v.* City of Pittsburgh, 1 Norris 360 ; and Washington Avenue, 19 P. F. Smith 352, followed.

2. In a *scire facias* on a municipal claim to recover the amount of an assessment of a tax for a street improvement, the defendant offered to prove that the widening of the street was not called for by any reason, save as a public improvement ; but the court rejected the offer. *Held*, that the evidence should have been admitted.

3. The Act of April 19th 1843, limiting a defence to a municipal claim to the denial that work had been done or materials furnished, or to proof of value, or of payment, or a release, extends only to incorporated districts of the county of Philadelphia.

4. PAXSON, J., dissenting. It was within the recognised power of the legislature to enact that Market street should be widened and paved, and the cost thereof assessed upon the property owners fronting on said street. Whether the power was exercised wisely, is a matter with which we have no concern ; it is not a judicial question.

February 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county :* Of July Term 1877, No. 39.

*Scire facias sur* municipal claim for paving, filed by the city of Philadelphia to the use of W. W. Dickinson, against Robert Craig,

[Craig *v.* City of Philadelphia.]

for work done in front of a lot of ground situated in the Twenty-seventh ward of the city of Philadelphia, south side of Market street, and west side of Forty-ninth street, fronting on Market street three hundred feet, depth two hundred and fourteen feet to Ludlow street.

The defendant pleaded the general issue and the following special plea:

That the said plaintiff ought not to have or maintain his aforesaid action against him, because he says that the work done and labor performed under the contract between the said plaintiff, W. W. Dickinson and the commissioner of highways, were charged for according to the frontage rule of assessment; and that the ground in front of which said paving and curbing were done, and against which said claim has been filed, is, and was at the time of doing said work, rural property, and assessed as such, wherefore, &c.

The property of defendant has only a small dwelling-house upon it, and was used principally as a nursery for plants and flowers, defendant being a florist.

The property through which Market street runs, from Forty-third to Sixty-third streets. is chiefly rural property, used for farm land and. brickyards, suburban residences, cemetery lots and a hospital for the insane. The other material facts will be found stated in the opinion of this court.

The verdict was• for plaintiff for $2258.48, and defendant took this writ, among the assignments of error being the rejection of his offers of testimony as stated in the opinion of this court.

*John H. Campbell* and *George W. Biddle*, for plaintiffs in error. —The defendant filed a special plea averring that the work done and labor performed under the contract between the plaintiff, W. W. Dickinson, and the commissioner of highways, were charged for according to the frontage rule of assessment; and that the ground in front of which said paving and curbing were done, and against which said claim has been filed, is, and was at the time of doing said work, rural property, and assessed as such. On this plea issue was joined.

The deposition of Mahlon H. Dickinson, the then commissioner of highways, put in evidence by the plaintiff himself, proved that all the properties were charged according to the frontage or per foot rule of assessment.

Under this plea, the question whether or not the property in question was rural property was squarely put at issue. The defendant, therefore, had a right under this plea, if it was material, and raised a material question of fact to offer any evidence in support of its averments: Washington Avenue, 19 P. F. Smith 353; Seely *v.* The. City of Pittsburgh, 1 Norris 60; Kaiser *v.* Weise, 4 Norris 366; Bidwell *v.* The City of Pittsburgh, Id. 412.

[Craig v. City of Philadelphia.]

The court erred in refusing to allow the defendant to prove that the widening of Market street was not called for by any reason save as a public improvement, and to keep a grand avenue through the city of a uniform width to the Delaware county line : Hammet v. The City of Philadelphia, 15 P. F. Smith 146 ; In re Market St., 32 Leg. Int. 370.

It is true that the Act of the 5th of April 1870, under which this improvement was made, does not on its face, show whether the improvement is public or local any more than the Act of the 3d of May, providing for the paving, &c., of Washington avenue and Penn avenue, in the city of Pittsburgh. But in the Pittsburgh cases evidence on the part of the complainants was admitted to show that such was, in reality, its true character. In this case the defendant below offered testimony of precisely the same character, but the court below refused to admit it. This was erroneous, because the defendant certainly had a right to offer testimony to show this, and if the fact were not so, the proper way to meet it would be by countervailing testimony from the plaintiff. The local courts cannot assume to say, in advance, what the character of any improvement is, apart from testimony ; and however difficult it may have been for the defendant below to show the fact, he certainly had a right to offer competent evidence to the jury to prove it.

The Act of the 19th day of April 1843, limiting the character of the defence to a municipal lien, is not operative within the district in which this work was performed (the Twenty-seventh Ward), for although, as was decided in Fell v. The City, 31 P. F. Smith 58, the Act of 1843 is still in force in the then incorporated districts, it is not in force in other parts of the present city ; and by reference to the Acts of the 17th of February 1844, Pamph. L. 44 ; 3d of April 1851, Pamph. L. 302, and the 14th of April 1853, Pamph. L. 422, it will be seen that the first incorporation of this portion of the county as the district of Belmont took place in 1844, subsequently, of course, to the passage of the Act of Assembly referred to.

*Joseph R. Rhoads* and *David W. Sellers*, for defendant in error. —Whatever may be the fact elsewhere, it is not the experience of this city that an equal charge on ground fronting on a highway works an injustice. If the lot is too shallow for advantageous building, it is readily sold to the one in the rear, or sufficient depth is attained by purchase. In a city where the distance between streets running east and west is uniform from the river Delaware to the city line, no difficulty arises by reason of the contents of the lot.

It is the presumable fact, recognised by a series of adjudications, that ground fronting on an established highway is improved in value more than the cost of the first paving, which has always led to the maintenance of the charge: McMasters v. Commonwealth, 3

[Craig *v.* City of Philadelphia.]

Watts 292. And although in a particular case the municipal work is wholly needless for the property charged, yet the same was held valid: Lipps *v.* City, 2 Wright 503.

The paving in this case was not exceptional. Market street was to be graded and paved according to the established grade. The owners on it were treated by the act as all other owners on the streets of the city. The legislature has provided a uniform and just system relative to rural property in this city which is entirely consistent with the municipal charges assessed thereon which bring it into the market.

The property of the defendant, if distinguished in the return of the assessor as rural, secures an abatement of one-third yearly until it ceases to be so distinguished. There is no mode of allowing a jury to sit as a board of appeal and determine that, if not so distinguished, it ought so to be, and when it is in the course of municipal administration so distinguished, it can not claim, if it be on a public highway, that it shall not be subject to the same local charges as are imposed upon all property in this city.

The second point assigned by the plaintiff in error assumes that although the legislature thought there was reason to widen Market street, it was competent for a jury to hold otherwise. The intent was manifested by the words of the statute, and unless the legislature can not widen a street, there is nothing to argue. In Mayor *v.* Randolph, 4 W. & S. 514; Clark *v.* Bridge Co., 5 Wright 160; Smedley *v.* Erwin, 1 P. F. Smith 450, it was held taking land for a public highway is taking it for a public use, and the degree of the public necessity is for the legislature not for the courts to determine.

Mr. Justice WOODWARD delivered the opinion of the court, May 7th 1879.

A contract was made between W. W. Dickinson and the City of Philadelphia, on the 26th of November 1872, in which Mr. Dickinson undertook "to grade, curb and pave Market street, from Forty-third street to the eastern end of the bridge over Cobb's creek, at Sixty-third street." The work was done, and after its completion, this proceeding was begun to enforce payment by Robert Craig, the defendant below, of the sum assessed on his property as his proportion of the cost. The claim was filed against a lot of ground on the south side of Market street, having a front on that street of three hundred feet, and extending in depth two hundred and fourteen feet to Ludlow street. The authority to make the contract, and the right to enforce the lien against the defendant's land, are rested on the provisions of the Act of the 5th of April 1870, by which it was made the duty of the chief commissioner of highways, immediately after the interest of the West Chester Plank-road and Turnpike Company in the road-bed of Market street, should be surrendered to the city of Philadelphia, "to proceed by

[Craig v. City of Philadelphia.]

giving due notice to property-owners along the line of said Market street," between Forty-third and Sixty-third streets, "and by all other requisite proceedings, to open the said street between the points named to the full width as laid down on the plan of the city, and to grade said street, and to enter into a contract with a competent paver to curb and pave the same; said contractor to collect the costs thereof, except the paving of intersections, as by law and ordinance provided." A verdict was rendered and a judgment entered in the Common Pleas for the full amount of the plaintiff's claim.

At the trial three offers were made on behalf of the defendant, and were rejected by the court. The first and second were propositions to prove that the defendant's "premises, against which this claim was filed, are situated in a rural district in the city of Philadelphia, and that a large part of Market street, from Forty-third to Sixty-third street, passes through rural and farm property, now used for farm purposes;" and "that all the property fronting on Market street, from Forty-third to Sixty-third, not exempt from taxation, is assessed as such rural property and farm land." It was decided in the case of Washington Avenue, 19 P. F. Smith 352, that an Act of Assembly authorizing a local assessment for a general public benefit was unconstitutional, and that, while the assessment of a tax for improving streets in towns, in proportion to the frontage on the street, is a reasonable exercise of the taxing power according to the benefits received, yet such a rule applies only to cities and large towns, where, from the density of the population and the small size of the lots, there is a reasonable certainty of arriving at a true result. In Seely v. The City of Pittsburgh, 1 Norris 360, which was a scire facias on a municipal claim for frontage tax, the facts were disclosed in a case stated. It was agreed that the line of the highway ran in part through the rural or suburban part of the city, and that the defendant's premises were situated in that rural district. The Act of the 2d of April 1870, which had provided for the improvement and authorized the assessment, was held to be unconstitutional, so far as it applied to lands in such a district. "The blending of town and country, of city lots and farm lands," was pronounced by AGNEW, C. J., to be "so plainly, palpably, rankly and ruinously unjust" as to be "void as against the right of property as protected by the Bill of Rights." These cases have been followed in Kaiser v. Weise, 4 Norris 366, and recognised in Bidwell v. The City of Pittsburgh, Id. 412. A rule of law settled by this court, in the Western District of the state, must necessarily prevail as a rule of law in the Eastern District. The evidence was legitimate and should have been received.

The third proposition was to prove "that the widening of Market street was not called for by any reason, save as a public improvement, and to keep a grand avenue through the city of a uniform width to the Delaware county line." Perhaps the terms

[Craig *v.* City of Philadelphia.]

of the offer were vague, but under the rules laid down in the cases that have been referred to, it was admissible. Its object was to show that the improvement was for the benefit of the general public, without producing any local advantage to the owners of lands along its line. " Local assessments can only be constitutional when imposed to pay for local improvements, clearly conferring special benefits on the properties assessed, and to the extent of those benefits. They cannot be so imposed when the improvement is either expressed or appears to be for general public benefit:" SHARSWOOD, J., in Hammett *v.* Philadelphia, 15 P. F. Smith 146. It may be added that they cannot be so imposed when it is *proved* to be for the public benefit without advantage to local properties.

A complete system for the improvement of this particular highway was provided by the Act of the 5th of April 1870. The consent of a majority of the property-owners on the line, the selection by them of a contractor, the passage of an ordinance by the councils, and the advertisements under the ordinance of 1862, were all dispensed with. Previous laws and existing ordinances were to be applied only in the collection of the cost of the work. Nothing appears in the record to show that notice was not given to owners, or that there was neglect to take "all other requisite proceedings to open the street."

In the argument of the fourth assignment of error, the counsel for the defendant discussed the cause as if in the trial the Act of the 19th of April 1843 had been held applicable to this claim. That act, which limited a defence to a claim to a denial that work had been done or materials furnished, to proof of value, or to proof of payment or a release, extended only to the incorporated districts of the county of Philadelphia. Was this part of Market street ever included in such a district? It seems certain that it was not in 1843. It could scarcely have been in West Philadelphia, which was chartered as a borough in 1844, and incorporated as a district in 1851. Was it within the district of Belmont, which was incorporated in 1853? The boundaries describing that district in the incorporating act indicate that it embraced no territory south of a line protracted westwardly from the western end of the northern boundary of West Philadelphia. It has sometimes been said that the Act of 1843 has been extended to the whole city by an ordinance of councils, under the authority of the proviso to the 44th section of the Consolidation Act of the 2d of February 1874. But no instance is recalled in which such an ordinance has been produced. The question was not raised in the trial, and is unimportant now. But it may become material hereafter.

Substantially, the defendant's points were answered, and in that, as the case was tried, no mistake or inaccuracy has been discovered.

Judgment reversed, and a *venire facias de novo* awarded.

[Craig v. City of Philadelphia.]

Mr. Justice Paxson filed the following dissenting opinion :

Had this case stopped where Seely v. The City of Pittsburgh ends I would have allowed it to pass with a mere dissent.  But as it is another step forward I desire to place upon record my reasons for such dissent.   They are :

1st.  The Act of Assembly under which Market street was widened and paved was an exercise of the taxing power of the Commonwealth.   This power is lodged by the constitution in the legislative department of the government, subject to the single restriction that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."   Beyond this there is no constitutional restriction upon this power.   It is bounded only by the necessities of the state and the will of the people.   It was within the recognised powers of the legislature to enact that Market street should be widened and paved, and the cost thereof assessed upon the property-owners fronting on said street.  Whether the power was exercised wisely is a matter with which we have no concern.   It is not a judicial question.

2d.  The legislature having decided that the cost of said improvement shall be assessed in accordance with the foot-front rule, we are bound to assume that such rule is just until the contrary appears.   It has been assumed and asserted that such rule is unjust and oppressive as applied to rural property, but it has never been proved.   On the contrary the arguments against it have been based upon the assumption that street improvements through rural property are oppressive and therefore unconstitutional.   There was no attempt made in the court below to show that the foot-front rule was unjust in its application to the property of the defendant.   The offer to show that the property on Market street from Forty-third to Sixty-third street was assessed as rural was irrelevant unless we assume that it is unconstitutional to open streets through rural property.   There is nothing in the constitution to warrant such assumption, and to adopt it would be to put a stop to the future growth of towns and cities.   Street improvements of necessity precede building improvements, and rural property can only be converted into urban by opening, grading and paving the highways.  Whether a street is ripe for such improvements is a legislative, not a judicial question.

3d.  I am unable to see what a jury have to do with questions of power or constitutional law.   The law does not confer upon a jury in a common-law proceeding the authority to revise the discretion of the legislature, or to decide when streets shall be opened.   The evidence rejected amounts to this, if it amounts to anything.   This clearly appears from the third specification, which is, "That the widening of Market street was not called for by any reason, save as a public improvement, and to keep a grand avenue through the city of a uniform width to the Delaware county line."   One jury

[Craig *v.* City of Philadelphia.]

will decide this question one way, another jury will take the opposite view of it; neither in my judgment has anything to do with it; nor has this court.

4th. If the courts may thus interfere with the taxing power of the Commonwealth, I am unable to see where it is to stop. It is impossible under any system of taxation that perfect equality shall exist. In framing general laws there will always be cases of individual hardship. If a citizen may decline to pay his general tax, or his special tax in the way of assessments (and they rest substantially upon the same principle), until the question of the sufficiency of his benefits may be settled in a common-law proceeding by a jury, we have introduced a principle into our jurisprudence which in my judgment is subversive of law and good government.

5th. I am opposed to the judiciary absorbing the powers of its co-ordinate deparments of the government.

The foregoing sufficiently indicates my objections to this judgment. I have no desire to elaborate. With profound respect for the views of the majority of the court, I must be allowed to express the opinion that the practical difficulties in the way of this line of decision will hereafter be found to be very serious, if not wholly insurmountable.