# Phila. to use, Appellants, v. T. B. Rice & Sons Co.

*Municipal claim—Paving—Scire facias—Road law—Evidence—Presumption—Necessity for paving—Property specially benefited—Neighborhood ripe for improvement—Act of May 28, 1915, P. L. 599.*

1. Under section 20 of the Act of May 28, 1915, P. L. 599, 605, a municipal claim is prima facie evidence of the facts averred therein. Hence, if on the trial of a scire facias issued on such a claim, defendant does not produce sufficient evidence to overcome the presumption, the jury should be instructed to render a verdict for plaintiff.

2. It is a matter of indifference whether a street became ripe for paving or other local benefits by the gradual growth of the municipality, or as the result of a great public improvement; the abutting property may be made liable if in fact the neighborhood is ripe for the improvements at the time they are made and the property is specially benefited to the extent of the cost of the work in front of it.

3. Where a city has a legal right to do that for which she sues, the courts will not inquire into the reasons for her action.

4. Recovery was refused in Washington Ave., 69 Pa. 352, and Craig v. Philadelphia, 89 Pa. 265, because the streets referred to in those opinions ran through a rural district, were not ripe for the paving at the time it was done, and the reason for then doing the work negatived the idea of an intention to benefit the abutting properties.

Argued March 29, 1922. Appeal, No. 371, Jan. T., 1922, by plaintiffs, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1918, No. 6706, on verdict for defendant, in case of City of Philadelphia to use of McNichol Pav-

ing & Construction Co., to use of the Third National Bank v. T. B. Rice & Sons Co.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SADLER, JJ.   Reversed.

Scire facias sur municipal claim for paving.   Before PATTERSON, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant.   Plaintiffs appealed.

*Error assigned,* among others, was refusal of plaintiff's motion for judgment n. o. v., quoting record.

*Frank Rogers Donahue* and *Glenn C. Mead,* Assistant City Solicitor, with them *David J. Smyth,* City Solicitor, and *Samuel M. Clement, Jr.,* for appellants.—The offering in evidence of the lien filed establishes the facts therein set forth and makes out a prima facie case for plaintiff: Phila. v. Bilyeu, 19 Pa. Dist. R. 454.

Even though a general benefit may result from the improvement this will not alter the local benefit by reason of which local benefit this lien may properly attach: Huidekoper v. Meadville, 83 Pa. 156; Beechwood Ave., 194 Pa. 86; Phila. v. Ginhart, 48 Pa. Superior Ct. 648; Michener v. Phila., 118 Pa. 535; Hammett v. Phila., 65 Pa. 146.

*Reynolds D. Brown,* for appellee.—While an ordinary city street is presumed to be laid out and improved for the benefit of the abutting property owners, nevertheless a great avenue or boulevard is presumed to be laid out for the benefit of the public, and the cost must therefore be assumed by the public: Craig v. Phila., 89 Pa. 265; Hammett v. Phila., 65 Pa. 146; Phila. v. Brown, 28 Pa. Dist. Rep. 1.

OPINION BY MR. JUSTICE SIMPSON, May 8, 1922:

The City of Philadelphia, to the use of its contractor, who had paved Delaware Avenue in front of defend-

ant's property, issued a scire facias upon a municipal claim, filed to recover the cost of the paving; defendant raises no question regarding the contract between the city and contractor, or touching the character of the work done, but alleges that the paving was part of a comprehensive scheme for the improvement of the port of the city, that the benefit to defendant's property, if any, was only incidental, not intended to be and in fact not taken into consideration in making the improvement, and hence payment should not be required of it. Upon this issue the case was tried twice, defendant recovering a verdict each time; on the last verdict judgment was entered and plaintiffs appealed.

At the trial, plaintiffs' point for binding instructions was refused; after verdict, their motion for judgment non obstante veredicto was dismissed; these two rulings are among those assigned for error, and are the only ones we find it necessary to consider. There is no substantial dispute regarding the facts; but in determining the controversy it must be steadily borne in mind that the defense is affirmative in character, and also that section 20 of the Act of May 28, 1915, P. L. 599, 605, makes the claim "prima facie evidence of the facts averred therein;" hence the burden was upon defendant to produce sufficient evidence to require the issue to be submitted to a jury for its consideration.

Delaware Avenue is a wide thoroughfare, adjoining and paralleling the Delaware River, and is principally used by cars and other vehicles carrying freight to and from the vessels which dock at the wharves of the river. Defendant owns a property at the northeast corner of Delaware Avenue and Mifflin Street; prior to the comprehensive improvements hereinafter detailed, it fronted on Commercial Avenue,—a plotted but unopened street 100 feet wide,—but by these improvements Delaware Avenue was extended Southward in front of and past defendant's property, and the bed of Commercial Avenue

became part of the bed of Delaware Avenue, which was made 200 feet wide at this point.

By an ordinance dated June 25, 1912, the Department of Public Works of the City was authorized, inter alia, to revise the lines and grades of Delaware Avenue, southward from Queen Street to beyond defendant's property, and of the streets intersecting therewith and adjacent thereto. When this revision was completed, the department was directed, by the ordinance of January 23, 1913, to notify the owners of property fronting on those streets that, at the expiration of three months, they would be opened at their increased width; this was in fact done and defendant claimed and was paid the damages which his property sustained by reason thereof.

By an ordinance, approved February 25, 1913, a loan of $7,000,000 was authorized, $250,000 of which was to be for the improvement of South Delaware Avenue; and by an ordinance approved May 2, 1913, from this loan that amount was directed to be set apart for the purpose stated, to be used "as council shall hereafter authorize."

By an ordinance approved July 3, 1913, "the Director of the Department of Public Works was authorized and directed to enter into contracts for the work necessary for the physical widening, grading and paving of...... Delaware Avenue, to its full width, as now upon the city plan, from Christian Street to Bigler Street and to charge the cost of the said work to [loan] Item 133 of the appropriation to the Department of Public Works." Defendant's property is between the points named, but no paving was done in front of it under the authority of this ordinance.

By an ordinance approved February 13, 1914, the mayor of the city was authorized to execute, acknowledge and deliver a contract (fully set forth in the ordinance) between the City and the Philadelphia, Baltimore and Washington Railroad Company, the Pennsylvania Railroad Company, the Schuylkill River East Side Rail-

road Company, the Baltimore and Ohio Railroad Company and the Philadelphia Belt Line Railroad Company. A fair abstract of its numerous provisions will be found in our opinion in Chew v. Philadelphia, 257 Pa. 589; for present purposes it suffices that the railroad tracks in the Southern part of the city were to be elevated, thereby abolishing present and avoiding future grade crossings; the existing railroads, and others later entering the city, were to be authorized, on equitable terms, to use any of the railroad tracks, no matter by whom owned; Delaware Avenue was to be widened and extended southwardly so as to pass defendant's property, and was to be paved a part of the distance but not to that point; this latter part of the improvement being made in order to enlarge the port facilities by providing an avenue along the river, wide enough for the probable needs, present and future, of the individuals and railroads carrying freight to and from the vessels, docked at wharves made sufficiently large to safely hold the vessels and allow them to be easily loaded and unloaded, whatever their size might be.

The last ordinance offered in evidence was that of July 6, 1914, and by it the Department of Public Works was authorized to enter into a contract for the paving of Delaware Avenue, with granite blocks, between the south side of Reed Street and the north side of Mifflin Street, the cost of the paving to be paid by assessment bills against the properties in front of which the work was to be done. Defendant's property is between the points designated. Under this ordinance, the city, on July 23, 1917, entered into a contract with use-plaintiffs to do the work, and, defendant not having paid for that done in front of its property, a municipal claim was duly filed and this scire facias issued to compel its payment.

Recognizing that under these ordinances the city was under no contractual obligation to do this paving, as part of the improvement of the river front, or to pay for

it out of the public treasury when the work was done, defendant called two witnesses for the purpose of showing that the paving was an integral part of the improvement, and hence should be considered as a general rather than a local benefit.   One of these witnesses had been Assistant Director and later Director of the Department of Docks and Wharves of the city covering the time when the foregoing ordinances were passed, but not at or after the date of the contract; and the other, a civil engineer not connected with the municipal government, but acquainted with what had been done in the course of the development of that part of the city.   In order that we may do no injustice to defendant, we will quote, and adopt for present purposes, the evidence given by these witnesses as abstracted in its paper-book.

From this source we learn that the first one testified: "That it was his duty to study the needs of the port and provide means for taking care of those needs; that one of the first studies undertaken was that of the proper location and width of the marginal avenues so-called, for the water front—in this instance Delaware Avenue. In the section affected by the Rice property it was found that the street was too near the pier headline; that it was not physically opened at the Rice property; that the nearest street paralleling, formally opened at that time, was Commercial Avenue, [which] backed the Rice property on the westerly side; that Commercial Avenue at that time was 100 feet in width; that it was decided after a study of the prospective needs of the port that the new piers which were contemplated for construction in this section south would require a much wider street, to properly accommodate the traffic flowing to and from them, than Commercial Avenue [was] at its original width of 100 feet; that that portion of Commercial Avenue incorporated in the new Delaware Avenue, then established or shortly thereafter established, was widened to 200 feet—twice the width of the original street; [that the] map prepared by the Department of

Docks in 1912 shows upon it the location of the piers recommended by the department; also the recommended location or relocation of Delaware Avenue between Washington Avenue and Porter Street; [that] above Christian Street and below Porter Street the avenue followed the same line shown on the old maps, between those two streets, however,......it was conceived that the original location of Delaware Avenue, as shown on the old city maps, was entirely too near the pier head line to permit of the construction of modern sized piers; that it was therefore recommended to the Department of Public Works by the Department of Docks that the Avenue be pushed further back from the river, to which request the Department of Public Works acceded and [this] resulted in the present location of the avenue shown on the map; that the old Commercial Avenue is incorporated in the new Delaware Avenue for about a mile or more in length, including [the portion in front of] the Rice property; that the Rice property had access from Commercial Avenue before the change and also access to the city by Mifflin Street; that the water front street, Delaware Avenue, was the preferred line of access from the lower portion of the water front to the middle city section, and it was widened and paved to improve that line of travel from the new pier developments which were afterwards constructed below this point; that Delaware Avenue was the marginal avenue intended to link the port units together; that as a marginal avenue for the business of the port the graded streets were not adequate and they were widened in accordance with the recommendations made at that time: [and] that there could be no other reason for widening the street, to the extreme degree that was done, than to accommodate the large traffic anticipated, and which in part has developed from the new pier."

The testimony of the other witness, as epitomized by defendant, shows that "The principal access to the city was out from the Rice property over Mifflin Street.

Commercial Avenue also passed in front of the property—that is on the west side of the property; that the Rice plant had railroad connections on the old Commercial Avenue; that the terminus of the new Delaware Avenue [was] at Pattison Street [far below defendant's property]; that just beyond Pattison Street...... is the terminus of the Pennsylvania Railroad-Greenwich Piers; that it is intended to embody the locality now occupied by those piers in the new port development, and Greenwich Point—what was known as Greenwich Point—will be removed to a new location to accommodate this comprehensive plan of the City, which included the widening of Delaware Avenue......[the] railroad tracks......[the] new piers of modern size to accommodate modern ships......all for the general benefit and improvement of Philadelphia and the surrounding country......in other words to make Philadelphia a real port; another result being that the new Delaware Avenue has good and easy access......to the other business sections of the city."

It must be conceded, that the combined effect of the ordinances and this testimony, is to show that the improvements along the Delaware River front and elsewhere, were part of a great public work, looking to future as well as present needs, carefully considered and provided for in advance; and that as a result thereof Delaware Avenue was made wider than was needed for the use of the abutting properties; but, as stated, for the damages resulting from this, defendant has been fully paid.

As will be noticed, however, there is no evidence that defendant's property was not specially benefited to the extent of the full cost of the paving; on the contrary, when plaintiffs offered to prove that it was so benefited, defendant objected that this was an immaterial matter. It will also be observed there is no proof that Delaware Avenue, in the neighborhood of defendant's property, was not ripe for the paving at the time it was done; yet

the absence of such proof made the attempted defense unavailing.

Doubtless it is true that the growth of that portion of the city was greatly stimulated by the wise municipal planning referred to, by the contract with the railroad companies and by the work done in pursuance thereof; this was intended, and it is a matter of rejoicing that the vision which foresaw the result, and therefore urged the improvement, has been justified by the event. In every live city, comprehensive forward planning does and should precede specific local improvements, and does not and should not result in penalizing these municipalities by depriving them of the right (admittedly enjoyed by less progressive cities), of assessing the cost thereof against the properties specially benefited. In the present instance (as the effect will always be if the planning is wise) this resulting stimulus was not felt by Delaware Avenue alone, but by all the neighborhood affected by this part of the improvement; and, by the removal of the grade crossings elsewhere, not only the streets named in the contract, but the near-by property in every direction therefrom, probably extending for miles to the southward of the elevated railroad tracks. All this, however, is beside the questions here, which are: Had the City of Philadelphia a reasonable right to believe, and hence to act on the belief, that Delaware Avenue, in the neighborhood of defendant's property, was ripe for the paving at the time it was done, irrespective of the question as to what was the cause of its reaching that condition, and was defendant's property specially benefited by the paving? If these questions are answered in favor of the city, as they must be because of defendant's failure to prove otherwise, that is the end of the controversy: In re Beechwood Avenue, 194 Pa. 86; Philadelphia v. Ginhart, 48 Pa. Superior Ct. 648.

The basic fact regarding Washington Avenue, Pittsburgh, (69 Pa. 352) and Market Street, Philadelphia, (Craig v. Philadelphia, 89 Pa. 265), was that on each of

those streets the paving was done through a rural district, not needing municipal improvements, and for a reason which negatived the idea of an intention to benefit the abutting properties.   In the present instance, if defendant had shown that the paving of Delaware Avenue at this point was not needed at the time it was laid, and its property was not benefited thereby, it would have presented a defense for a jury's consideration, just as in Washington Avenue and Market Street, supra.   This was not shown, however, and since the courts cannot inquire into the city's reasons for doing that which she was legally entitled to do (Scott v. Pittsburgh, 266 Pa. 52; Roush v. Herbick, 269 Pa. 145), we can only conclude that defendant has not carried the burden referred to in the beginning of this opinion, and plaintiffs' prima facie right to recover has not been overthrown by the evidence.

The judgment of the court below is reversed and judgment is here entered for plaintiffs non obstante veredicto; the damages to be assessed in the court below as in other similar cases.