Erie City's Appeal. Mill Creek Case.

Argued May 15, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*S. L. Gilson,* with him *J. B. Held,* city solicitor, and *T. P. Dunn,* assistant city solicitor, for appellant.—The fact that the public is benefited generally by the construction of an improvement does not preclude the assessment of abutting property for local special benefits actually accruing where the improvement is constructed under authority of statutes authorizing the assessment of benefits and damages: West Liberty Ave., 70 Pa. Superior Ct. 348; Beechwood Ave., 194 Pa. 86; Craig v. Phila., 89 Pa. 265, 270; Harrisburg v. Segelbaum, 151 Pa. 172; Morewood Ave., 159 Pa. 20; Pitts. Orphan Asylum's App., 111 Pa. 135; Williamsport v. Beck, 128 Pa. 147, 152; Hammett v. Phila., 65 Pa. 146; U. S. v. River Rouge Imp. Co., 269 U. S. 411; Phila. to use v. Salt Mfg. Co., 286 Pa. 1; Hamilton Ave., 256 Pa. 271.

The fact that the cost of relocating the channel and enclosing Mill Creek was paid for from the proceeds of bonds issued by the city, does not prevent the assessment against abutting properties for benefits actually received: Beechwood Ave., 194 Pa. 86; Lamb v. Erie City, 262 Pa. 391.

*Charles H. English,* with him *C. P. Hewes, Charles C. Eaton, A. O. Chapin, John B. Brooks, J. M. Sherwin, W. S. Carroll, P. V. Gifford, A. E. Sisson, J. Reed Craig* and *J. R. Haughney,* for appellee.—Where a third-class city relocates in large part the course of a nonnavigable stream flowing through the city and incloses the same in a large concrete tube, as part of a general flood control project and for the protection and preservation of the lives and health of the inhabitants, the city can not assess benefits against private property crossed by and abutting said tube or along the original channel of the stream, to help defray the cost of said improvement: Laughlin v. Transit, 241 Pa. 281; Hammett v. Phila., 65 Pa. 146; Saw Mill Run Bridge, 85 Pa. 163; Ander-

son v. Twp., 217 Pa. 369; Chalmers v. Phila., 250 Pa. 251; Ashworth v. Rys., 231 Pa. 539; Wyoming Street, 137 Pa. 494; Scranton S. Dist. App., 113 Pa. 176; Ruan Street, 132 Pa. 257; Weinman v. Ry., 118 Pa. 192.

OPINION BY MR. JUSTICE SIMPSON, July 1, 1929:

In its natural surroundings, Mill Creek, winding its way through the City of Erie, was doubtless a thing of beauty; but, as the city grew, it became less and less desirable, and in the great rainfall of August 3, 1915, (to quote from appellees' brief) "the waters of the creek, together with a quantity of debris, cumulated at the 26th Street bridge......forming a dam, causing the water to back up and finally burst through the bridge and sweep down the bed and valley of Mill Creek, causing the loss of about a score of lives and great property damage, both public and private." Still quoting: "Following this flood, and the consequent loss of life and damage to property, the council of the City of Erie, deeming it necessary for the preservation and the health, safety, property and public welfare,......undertook a general public project designated as the Mill Creek Flood Control Project, the purpose of which was the safeguarding of the lives and property of the inhabitants of the city." Appropriate municipal action was taken, the course of the creek was straightened, and its water diverted into an underground conduit, made of concrete and sufficiently large to carry safely, at all times, the water which otherwise would have flowed along the natural course of the stream. After the work was completed, a jury of view was appointed, on application of the city, to determine the amount of damages and benefits occasioned by the improvement. In due course it filed its report showing damages to some properties and benefits to others, the latter aggregating only about one-ninth of the $2,067,595.28, paid by the city for the construction of the conduit. Those against whom benefits were assessed filed exceptions to the report, several of

which assert "that the City of Erie is without authority in law to assess benefits" against their properties. Upon consideration of these specific exceptions only, the court below entered a final order directing that the report be confirmed so far as concerned the awards of damages, but set aside, so far as related to the assessments of benefits, and, because of the last part of this order, the city now appeals.

After reciting the preliminary facts, the chancellor held that they "establish the general character of said improvement and remove it entirely from the class of local improvements for construction of which benefits may be assessed." This conclusion the court in banc sustained. The general character stated is established beyond all question; few other improvements could be of more general benefit than this one; but that fact alone does not justify the court's conclusion. It is true, of course, that the character of improvements out of which assessments for benefits generally arise, are what the court below terms "local improvements"; this is because most municipal improvements are of that nature. Even such improvements, however, in legal intendment have for their basis a general public purpose, not a local one; but, so far as there are special benefits,— that is, those different in kind and not merely in degree from what the general public obtains by the improvement,—the properties specially benefited may be assessed, to the extent thereof, to help pay therefor. Thus a street is not paved for the purpose of benefiting the abutting property only, but in order that citizens, denizens and transients may readily travel upon it, yet the abutting properties may be required to pay a proportionate part of the cost, not exceeding, however, the special benefits to them. So, also, a sewer is laid in a street, not for the benefit of the abutting owners, but, in order to conserve the public health; yet the abutting property, which does or can connect with it, may be assessed to help pay for the improvement, to the extent of the result-

ing local benefit. True, in Park Avenue Sewers, 169 Pa. 433, 437, and Beechwood Avenue Sewer, 179 Pa. 490, it was held that nonabutting property cannot be assessed any part of the cost of a street sewer, because, as to them, its only benefit is the general one of conserving the public health; but this is far from ruling the instant case, where, admittedly, there were special benefits to the land which was formerly in the bed and along the banks of the creek, but which, by the relocation, had become available for use as any other land would be. Whether this fact accounts for all the benefits assessed, we do not know; nor is it important that we should, since the decision below set aside all these assessments, irrespective of whether or not the properties were in fact specially benefited.

If the question were an open one, which it no longer is, there would be difficulty in giving a valid reason why the right of contribution by a property specially benefited should be made to depend on the relative extent of the public character of the improvement. Given the fact that the legislature may constitutionally impose a liability on properties specially benefited, it is not for the courts to draw the line short of the point where they can assert, with certainty, that there could not possibly be any such benefits. We so held in Beechwood Avenue, 194 Pa. 86, as did the Superior Court in Phila. v. Ginhart, 48 Pa. Superior Ct. 648, and the Supreme Court of the United States in U. S. v. River Rouge Improvement Co., 269 U. S. 411; and we hoped the question had been set at rest by our recent decisions in Phila. to use v. T. B. Rice & Sons Co., 274 Pa. 256, and in Phila. to use v. Penna. Salt Manufacturing Co., 286 Pa. 1. In the first of these latter cases the jury found the facts to be (274 Pa. 258), "that the paving was part of a comprehensive scheme for the improvement of the port of the city, that the benefit to defendant's property, if any, was only incidental, not intended to be and in fact not taken into consideration in making the improvement."

The court below approved that finding, and entered judgment for defendant; but, because of the special benefits accruing to its property, we held it liable, saying, at page 264: "All this, however, is beside the questions here, which are: Had the City of Philadelphia a reasonable right to believe, and hence to act on the belief, that Delaware Avenue, in the neighborhood of defendant's property, was ripe for the paving at the time it was done, irrespective of the question as to what was the cause of its reaching that condition, and was defendant's property specially benefited by the paving? If these questions are answered in favor of the city, as they must be because of defendant's failure to prove otherwise, that is the end of the controversy."

If the authorities, relied on by the court below and by appellees, militated against the conclusion reached by us in the cases last cited, they would have to be considered as overruled; but, properly understood, they have no such effect. True, there are expressions in some of our opinions, which, if severed from their essential facts, would appear to be antagonistic to our present conclusion; but they cannot properly be severed therefrom: Com. ex rel. v. Wert, 282 Pa. 575. Of Hammett v. Philadelphia, 65 Pa. 146, greatly relied on by appellees, because so many of those expressions appear in it, it was said in Appeal of Protestant Orphan Asylum of Pittsburgh, 111 Pa. 135, 144: "Much has been said in the attempt to weaken the force of the point ruled in Hammett v. Philadelphia; as that Broad Street was intended for a great public drive, and that thus was given to it a character not attaching to ordinary city highways. But all this is sound without substance. The question, and the only question, before the court was the constitutionality of the act imposing the cost of repaving Broad Street on the adjacent property, and this matter is thus disposed of by Mr. Justice SHARSWOOD: 'But when a street is once opened and paved, thus assimilated with the rest of the city and made part of it, all the particular

benefits to the locality derived from the improvements have been received and enjoyed.'" Because of this, assessments for benefits were likewise denied in the Protestant Orphan Asylum Case, supra, and in Williamsport City v. Beck, 128 Pa. 147; Harrisburg v. Segelbaum, 151 Pa. 172, and Morewood Ave., 159 Pa. 20, the last named case deciding also that, in the case of street improvements, a statute is constitutional only to the extent that it limits such assessments to the benefits accruing to abutting property. To the same effect are Park Avenue Sewers, 169 Pa. 433, and Beechwood Avenue Sewer (1), 179 Pa. 490. Of the two remaining cases relied on, we said in Philadelphia to use v. Rice, supra, at page 264: "The basic fact regarding Washington Avenue, Pittsburgh, [69 Pa. 352] and Market Street, Philadelphia, [Craig v. Philadelphia, 89 Pa. 265], was that on each of those streets the paving was done through a rural district, not needing municipal improvements, and for a reason which negatived the idea of an intention to benefit the abutting properties."

The court below further says that, since the ballots used by the electors, when determining whether or not the city's debt should be increased for the purpose of making the improvement, did not specify that the properties benefited would be called upon to pay any portion of the cost, it would be manifestly unfair to require the contribution; because had those now assessed known of this possibility "they might have voted against the increase of indebtedness and thereby defeated the proposition at the polls." So, also, it may be said, with a greater show of reason, that, if a contest had been made on this point, the other electors, who could not be assessed benefits, might, in greater numbers, have voted for the improvement, because thereby the city debt, for which they were liable to be taxed, would be proportionately reduced. Such speculations, however, find no proper place when determining the rights of the parties growing out of this or any other public improvement. It suffices that

the city waived none of its rights and misled none of its electors, and the courts cannot go back of the actions of the voters to guess at their motives. As we ruled in Beechwood Avenue, 194 Pa. 86, and approved in Anderson v. Lower Merion Township, 217 Pa. 369, 385: "The fact that a city creates a fund by means of a loan to pay for street improvements for which it is legally liable, cannot be construed to disclose an intention by the city to relieve from assessments property which has been specially benefited."

Finally, says the court below, "this tube constituted a general storm sewer and not a sanitary sewer...... [with which] none of the properties abutting on the line of said tube or improvement has any access to or connection......for drainage or other purposes," and hence nobody can be assessed benefits. This, however, begs the question, even if the fact of nonaccess be admitted. We might readily agree that if the creek and the conduit had been and were in a public street, and the abutting properties were not allowed to connect with the latter, they could not be assessed benefits, and this for the obvious reason that they could get no special benefit from it. But a very different question arises where, as here, the owners in fee of the bed of the stream and of its banks, have their properties put in usable condition. As to them, this is a very real as well as a special benefit, and for it their properties may be held liable.

The only case in this state, the facts of which approximate those here, is Grafius' Run, 31 Pa. Superior Ct. 638, where the court, in an opinion by Judge HEAD, said: (page 645): "Strong reasons, indeed, might be urged for holding that, in a proceeding like the present,...... the line of improvement would embrace not only the line of the newly constructed channel of the stream, whether on or beneath the surface, but also the line of the old and vacated channel, because the properties abutting on the latter would be physically changed and affected by the accretion to each of its proportionate share of the

abandoned waterway. But as the properties of the appellants here are remote from both the old and the new channels, we are not required to consider that question." That question is now squarely raised, however, and we decide that the "strong reasons" stated by the Superior Court, are also logical and legal reasons, and require the conclusion that the specially benefited properties along the line of the natural water course are liable. This is, indeed, but a proper application of the rule, established under article XVI, section 8 of our Constitution, that where "municipal and other corporations and individuals invested with the privilege of taking private property for public use," obviously and certainly cause proximate, immediate and substantial damages to nonabutting property by the "construction or enlargement of their works, highways or improvements," they must compensate such nonabutters to the extent thereof: Robbins v. Scranton, 217 Pa. 577; Ogontz Avenue, 225 Pa. 126; Dieterich v. Phila., 248 Pa. 586, 590. No reason appears why the corollary thereof should not be equally true; that is, to the extent it is obvious and certain that such nonabutters receive proximate, immediate and substantial special benefits from that character of improvement, they may be assessed to help pay for it, if the legislature has so provided.

What we have said disposes of all the points suggested by the court below, but appellees urge two others which go to the whole case, and hence should be considered at this time. They contend that, although the improvement was a single one, two proceedings should have been instituted, one under the Act of April 28, 1899, P. L. 74, which authorizes the assessment of benefits and damages incident to the exercise of the power "to vacate, change, alter or relocate the course or channel of any creek, run or natural waterway," but not to enclose the stream in a conduit; and the other under the Act of June 1, 1907, P. L. 378, which authorizes cities of the third class to "confine and pave, or completely enclose any creek, run

or natural waterway," and to assess the damages and benefits thereby arising. They further contend that the limitation to cities of the third class makes the last named statute unconstitutional, because, by article III, section 7, of the State Constitution, "The General Assembly shall not pass any local or special law......regulating the affairs of......cities." We do not agree with either contention.

So far as relates to the first of them, it is hard to see how two such proceedings could have been conducted separately; but whether they could or could not, since the improvement was a single one, embracing both relocating and enclosing the stream, the proper course was to have but one proceeding, no matter how many statutes had to be considered. Had two proceedings been instituted, it would have been within the equitable power of the court to consolidate them, since no statute forbids it, but, on the contrary, the right so to do may not unreasonably be said to obtain recognition in section 7 of the Act of 1899 (P. L. 77), and in section 6 of the Act of 1907 (P. L. 380). The law is a practical science, and, in the absence of statutory inhibition, our courts may take such steps, regarding matters properly before them, as will promote the administration of justice. Here the relocation and enclosing of the stream were wisely made as a single improvement, and were wisely treated as such in the proceedings below.

There are two answers to the contention made regarding the constitutionality of the Act of 1907. If we were to hold it to be unconstitutional, we would still have to reverse the order appealed from, for the Act of 1899 is a general statute providing a complete system for assessing damages and benefits following the relocation of a stream, and many of the benefits assessed in this case must have arisen by reason of the fact that the owners of the bed and banks of Mill Creek received, simply because of the change of location, available land,

which, but for the improvement, they could not have used.

Moreover, we are not convinced of the unconstitutionality of the Act of 1907. True, it is limited to cities of the third class, but that alone is not sufficient to condemn it. At the time of its passage, the cities of the state were divided, for municipal purposes, into three classes, by the Act of May 23, 1874, P. L. 230; and this and similar statutes have been frequently sustained so far as related to such "municipal purposes," or, as it is sometimes expressed, to the regulation of municipal powers or to matters of local government. This conclusion runs steadily through our cases from Wheeler v. Phila., 77 Pa. 338 (1875) to Graeff v. Schlottman, 287 Pa. 342 (1926), and is not affected by Chalmers v. Phila., 250 Pa. 251, relied on by appellees, since there the statute held unconstitutional was not able to stand the required test. Whether or not a particular statute can stand it, has often been a subject of prolonged argument and consideration, but the standard itself has remained unchanged. We are quite willing to agree with appellees that "a law which will not bear the test that it must apply to all members of the class to which it relates, and be directed to the existence and regulation of municipal power, is a local law, and as such it is invalid, if it be upon one of the subjects as to which local and special legislation is forbidden by the constitution." Conversely, a law which will bear the test stated is constitutional, and this the Act of 1907 does. It ought to need no authority to show that the improvement now under consideration is for a municipal purpose, a local governmental matter, but he who doubts it will find the point raised and decided in Anderson v. Lower Merion Township, 217 Pa. 369.

At the time of the passage of the Act of 1907, Erie was, and at all times since has been, a city of the third class. Hence the statute applies to it. He who seeks a reason why the legislature so limited the act, can readily find it

in the fact that a city with less than 100,000 population, as third-class cities were, might be unable to bear so great an expense as this character of improvement entails, without aid from those specially benefited by it, whereas the larger and wealthier cities of the first and second classes might readily do so.

Our ultimate conclusion is, therefore, that the court below erred in holding, as a matter of law, that no benefits can be assessed in this class of cases. Whether or not there are available objections in individual instances we do not know, but the judgment we enter will protect the owners in such cases, if any there be.

The order of the court below is reversed so far as it relates to setting aside all the benefits assessed by the jury of view, the assessments are reinstated, and the record is remitted for further proceedings not inconsistent with this opinion.