## Zimmerman's Estate

*John Adams, Jr.*, and *Edmund W. Kirby*, of *Morris & Kirby*, for exceptants.

*Robert V. Massey, Jr.*, of *Barnes, Biddle & Myers*, contra.

KLEIN, J., September 23, 1938. — Exceptions were taken to the allowance by the auditing judge of the claim of the Pennsylvania Railroad for freight charges incurred on the shipment of seven cars of grapes, originating in California, and diverted at Philadelphia by decedent, a commission merchant, to a firm in Newark, N. J., from whom, by reason of bankruptcy, the railroad company was unable to collect the balance here claimed.

There is no dispute as to any of the facts which are all contained in a stipulation. Our decision depends entirely upon the sufficiency of the disclosure by decedent of the fact that he was acting as an agent for a named principal.

After a careful study of the problem, which is a novel one to be presented to a probate court, we are of opinion that the allowance of the Pennsylvania Railroad's claim, as ultimate carrier, in the sum of $4,344.11, with interest to the date of decedent's death, was proper.

The question of a consignee's liability for freight charges has been the subject of much litigation. The authorities are agreed that a consignee who either receives or exercises dominion over the goods by ordering a reconsignment becomes responsible for the freight charges thereon: Pa. R. R. v. Rothstein & Sons, 109 Pa. Superior Ct. 96 (1933); West Jersey & Seashore R. R. Co. v. Whiting Lumber Co., 71 Pa. Superior Ct. 161, 164 (1919); Philadelphia & Reading Ry. Co. v. International Motor Co., 84 Pa. Superior Ct. 582, 587 (1925); Philadelphia & Reading Ry. Co. v. Taylor et al., 102 Pa. Superior Ct. 31 (1930); Pa. R. R. Co. v. Lord & Spencer, Inc. (Mass. 1936), 3 N. E. (2d) 231.

It also seems clear that the consignee can avoid liability for the tariff charges if in the written diversion order he discloses the fact that he is acting as an agent for a named principal. But even written notice of such nonbeneficial interest is not in all cases sufficient. If this disclosure does not accompany the written diversion order, but has been given prior thereto, the consignee remains liable. Title may change in the interim and the company is upon no duty of inquiry to dispel the implication of ownership contained in the diversion order.

The leading case in Pennsylvania on the subject is Pa. R. R. Co. v. Rothstein et al., 116 Pa. Superior Ct. 156 (1935). In this case the carrier, prior to the written order of diversion, had upon arrival of the goods some 10 days previous admittedly received notice of nonbeneficial interest, but the notice of diversion upon which it subsequently acted contained no such notice. The defendant was held liable, Judge Cunningham stating at page 161:

"In order to crystallize the rulings of our earlier cases, we now state the definite rule that a diversion or recon-

signment order obligates the one signing it for the payment of freight charges, unless he states, in the order itself, not only the fact that he is acting as agent for another, but also the name of his principal. *When this is done, the carrier will know for whom it is acting and so be able to determine whether it is willing to undertake the contract."* (Italics supplied.)

The auditing judge held that the entire claim was squarely controlled by this rule and that since liability was contracted by the written diversion orders, which admittedly contained no disclosure of agency, any non-beneficial notices, verbal or written, either prior or subsequent to the actual written diversion orders, were immaterial and insufficient to relieve decedent from liability.

We are not prepared to accept this general rule as literally as the learned auditing judge because of the factual differences existing between the instant case and the case in which the rule was enunciated. In Schuetz's Estate, 315 Pa. 105 (1934), Mr. Justice Simpson said at page 109:

". . . as has often been said, 'in every case what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but obiter dicta': Cohens v. Virginia, 6 Wheaton, 264, 399; Weyerhaeuser v. Hoyt, 219 U. S. 380, 394; Erie City's Appeal, 297 Pa. 260, 266; Welsch v. Pittsburgh Terminal Coal Co., 303 Pa. 405, 408."

We must therefore study the facts in the present case more closely.

Two of the cars, nos. 14898 and 18403, emanated from Modesto, Calif., containing merchandise consigned to James Tozzi & Co. at Philadelphia. After arrival in Philadelphia, the contents of the cars were sold on October 28, 1932, at auction, to decedent. On October 20th, which was eight days before decedent purchased the merchandise, Wolf & Cohen, another firm of commission brokers, sent notices to the railroad that they, Wolf &

Cohen, were acting as agents and that the beneficial owners of the property were James Tozzi & Co. Surely these notices given by another broker, prior to the purchase of the grapes by decedent, can have no relevancy to the question of decedent's liability. He was, admittedly, the owner of the merchandise and gave no notice at any time, either written or verbal, to the railroad that he was not the beneficial owner or that he was acting as agent for a named principal. It is therefore clear that the estate is liable for the freight charges on these two cars.

The factual situation with respect to the other five cars presents a different picture. All of these cars originated in California, and after prior diversions were consigned to decedent and delivered to the B. & O. produce terminal in Philadelphia. Decedent verbally ordered all of them diverted to the Newark firm sometime on October 27 or 28, 1932; verbal notices of nonbeneficial ownership were filed with the B. & O. Railroad, either on the same day that the verbal diversion orders were given or on the following day. The cars were then moved from the B. & O. produce terminal and delivered to the tracks of the Pennsylvania Railroad, the ultimate carrier and the claimant here. In every case a written diversion order was filed with the B. & O. after the car was received by the Pennsylvania Railroad. None of these diversion orders contained a statement that decedent was acting as an agent for a disclosed principal. The order for car no. 10371, however, bore the following notation: "Beneficiary Notice filed today. Urick & Hollis. Fresno, Calif." A written nonbeneficiary notice, disclosing decedent's agency and naming the principal, was filed with the B. & O. Railroad for this car on October 29th, after the written diversion order had been filed. At the same time, and also after the movement of the cars, but before the delivery of the written diversion orders, similar nonbeneficiary notices were filed for cars nos. 14035, 13584, 12104. The only written notice affecting car no. 14425, disclosing that decedent was acting as an agent for a dis-

closed principal, was filed with the B. & O. Railroad on October 20, 1932, seven days prior to the verbal diversion order.

We know of no statute, State or Federal, or of any rule or regulation prescribed by the Interstate Commerce Commission or the carriers which requires a contract for the diversion of freight to be in writing. The written diversion order is usually the contract which embodies the entire agreement of the parties and immutably fixes their contractual rights and liabilities. This, however, is not always so. In some cases the order is not, strictly speaking, the contract itself, but merely the confirmation of a previously made verbal contract. In such cases the ordinary rules of law concerning partial or complete integration of contracts must be applied, and each case would have to be studied on its own facts.

The true test of liability of the consignee who diverts, and one which is not precluded by Judge Cunningham's opinion in the Rothstein case, but rather seems suggested by it, is whether at the time the railroad company actually undertakes to act upon a diversion order, it is cognizant of or may by the circumstances of the case be presumed to know that the consignee is acting as agent for a named principal, so that it may decide whether to engage upon the undertaking or not.

A different problem would have been presented here had decedent, when he verbally disclosed to the railroad the fact that he was acting as agent prior to the movement of the cars, also disclosed the name of the principal for whom he was acting. We need not, however, consider that question because the stipulation of facts fails to reveal that such disclosure was made. It is true that the learned counsel for exceptant argues as if the facts show that the name of the principal was disclosed at the time notice of nonbeneficial ownership was given to the carrier, but we fail to find such evidence in the record unless the words "Notice of non-beneficial ownership" in the trade parlance imply that fact. If it does, the record is never-

theless deficient in failing to show to the court such special meaning of the words used in the stipulation of facts. This omission is fatal to the defense to the claim. Judge Cunningham in Pa. R. R. v. Rothstein & Sons, 109 Pa. Superior Ct. 96, said at page 105:

"Even had the reconsignment order been coupled with the notice of agency, this would also have been ineffective to prevent judgment. It is an elemental principle of agency that to relieve himself from liability, an agent in dealing with a third party must not only disclose the fact of the agency, but also the name of his principal: Horan v. Hughes, 129 Fed. 248, affirmed 129 Fed. 1005; Sloan Corp. v. Linton, 260 Pa. 569, 572; 2 C. J. 816, 817."

Once the railroad undertook the contract and started to move the cars, no change could be made in its terms without its consent. See Chicago & Northwestern Ry. Co. v. Picard et al., 98 Pa. Superior Ct. 134 (1929), in which Judge Keller said at page 136:

"In his affidavit he [the defendant] calls this letter a cancellation of his prior request for prepayment of freight, but apparently overlooks that when the railroad company agreed to the terms of his reconsignment order and started the movement of the freight thereunder it became a contract, whose conditions or terms of payment he could not cancel or change without its consent, and he does not aver in his affidavit that such consent was ever given. It was a matter on which the parties were free to contract, subject to the rule which prevents discrimination: L. & N. R. R. v. Central Iron Co., 265 U. S. 59, 65."

Nothing is contained in the stipulation of facts which indicates that the company agreed to any change in the verbal contract. The filing of the written nonbeneficiary notices with the B. & O. Railroad, after it had actually moved the cars from its produce terminal to the tracks of the P. R. R., the succeeding carrier, is not sufficient to relieve the decedent from the liability he had incurred. And with respect to car no. 14425, since no verbal dis-

closure was made of the name of the principal, the written notice filed on October 20th causes the situation to be squarely controlled by the rule laid down by Judge Cunningham.

Counsel for exceptant contend that in addition to the other reasons advanced by them, the estate is not liable for the charges on car no. 10371 because of the notation above referred to, which appears on the written diversion order. In our opinion, the presence of this notation is not sufficient, under the circumstances, to constitute a defense to the railroad's claim, since the record discloses that this notice was not given until after the cars had been moved.

The exceptions are therefore all dismissed and the adjudication is confirmed absolutely.