## Mellor, Ex'r, et al., *v.* City of Philadelphia, Appellant.

*Road law—Change of grade of street—Cutting off ingress and egress— Consequential damages—Constitution, art. 16, sec. 8.*

Article 16, section 8, of the constitution of 1874, which provides that compensation shall be made for property injured or destroyed by public works, is not limited merely to property fronting or abutting on the particular works, highway or improvement by the construction or enlargement of which the property is injured or destroyed, but applies to any works which are sufficiently near to the property to make the injury proximate, immediate and substantial.

Plaintiffs' houses fronted on a street running along the line of a railroad. Two other streets crossed at grade the railroad, and the street upon which the houses were situated. To avoid the grade crossings the city depressed the two cross streets fifteen feet, so that the streets could go·under the railroad. Access to plaintiffs' houses by vehicles was thus entirely cut off. *Held*, that plaintiffs were entitled to recover damages from the city for the depreciation in the value of their houses.

*Damages—Release—Evidence.*

In the above case, where the proceedings were as to one of the streets, it was not improper upon plaintiffs' releasing damages as to the other street in other proceedings, to admit testimony tending to show the damages resulting not merely from lowering the grade of one of the streets, but from changing the grades of both streets.

Argued Jan. 22, 1894. Appeals, Nos. 140 to 155, Jan. T., 1894, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1891, No. 766, etc., on verdict for plaintiffs, Robert Mellor, administrator of Joseph Mellor, deceased, et al. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeals from reports of viewers assessing damages for change of grade of Orthodox street, Phila. Before THAYER, P. J.

At the trial, it appeared that the sixteen plaintiffs owned houses and lots on Trenton avenue, a narrow street running east and west along the Pennsylvania Railroad in Frankford. Ten of the properties were between Orthodox street and Margaret street. Six of the properties were to the west of Orthodox street. The first group of ten properties had ingress and egress by Trenton avenue to either Orthodox street or Margaret street. The second group of six properties had in-

gress and egress by Trenton avenue to Orthodox street or Oxford street, which was eight hundred and fifty feet further west. Councils of the city of Philadelphia, deeming it desirable to do away with grade crossings, passed an ordinance to lower the grade of Orthodox and Margaret streets and thus carry them under the railroad. In carrying out this work, the streets were depressed about fifteen feet, cutting off access by vehicles to and from the first group of ten properties, and also cutting off access by way of Orthodox street to the second group of six houses.

Plaintiffs filed of record the following release:

" We, the undersigned, hereby agree that, upon payment by the city of the judgments hereinafter given upon verdicts about to be rendered in these cases, we will waive all claim which any of us might make in proceedings for the assessment of damages for change of grade of Margaret street."

The court admitted, under objection and exception, evidence of the combined amounts of damage of the changes of grade of both streets. [1, 2]

The court charged, as to the eastern group, in part as follows:

" It appears from the evidence that Orthodox street has been cut down some fourteen or fifteen feet from the original grade, and that Margaret street has been cut down about fourteen feet, leaving this row of properties fronting on Trenton avenue without any reasonable access whatever. [The point has been made that you ought to be confined to the damages which are to be awarded for the alteration of the grade of Orthodox street and that you cannot consider Margaret street. The inquiry is about the damages suffered by the alteration of the grade of Orthodox street, but inasmuch as it appears by the evidence in the case that the other means of access to the street has also been destroyed, it is very proper indeed that you should consider that fact in estimating damages which are to be awarded for destroying access by Orthodox street.] [3] I do not believe that either the city or the city's counsel would be willing to place themselves in the attitude of saying that the claimants, however just and worthy their claims are, are to be deprived of compensation which they claim for alteration of the grade of Orthodox street because they are also deprived of all access by Margaret street, which was altered within a month

of the other. These parties have plainly been deprived of all reasonable access to their properties, they have been cut off at both ends where they had access before, and the injury was done about the same time, and it is perfectly proper for you in assessing the damages in this case to consider that fact. · The claimants, in order to preclude any future complications, and to relieve the city of any claim for double damages, first for Orthodox street and then for Margaret street afterwards, have filed a release of all claim for damages upon Margaret street in the future. The release of course will take effect upon the payment of the damages which you shall award for the injury done by the alteration of the grade of Orthodox street.

"If it had been possible and convenient, it perhaps would have been better to have tried the claims arising out of Margaret street with those arising out of Orthodox street—to have combined them—but the injury which is done by the closing of Orthodox street naturally involves the whole question, inasmuch as the claimants have waived any claim for the alteration of the grade of Margaret street and executed a release thereof. I think it is perfectly competent therefore that they should show to you that by the change of grade of Orthodox street they have been cut off from all reasonable access to their properties and that their properties have been consequently reduced in value by that fact."

The court charged as to the western group in part as follows :

"The 16th article of the constitution of this state reads as follows: 'Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property injured or destroyed by the construction or enlargement of their works, highways or improvements.' This provision of the constitution covers a loss incurred by the change of grade of a street, which change has resulted in damage or injury to the owners of property, provided the street or highway on which the grade has been changed, and the injury resulting from it, are sufficiently proximate to the ground owned by the plaintiffs to make the injury a *direct, proximate* and *substantial* loss. One of the points made by the defendant's counsel, which is entirely a point of law, is that the plaintiffs are not entitled to any damages because the street, the grading of which was altered, is not

the street on which this property fronts, but a street running at right angles to the street on which these houses front,—that is, Trenton avenue,—and that, inasmuch as these houses do not front on Orthodox street, the plaintiffs are not entitled to any damages; that because Trenton avenue has not been changed, the plaintiffs, no matter how much they may have been injured, are not entitled to damages for the alteration of the side street.

" I cannot consent to give so narrow a construction to the constitution as this would be.  I admit that where the street which undergoes an alteration is not sufficiently near to the property of a citizen to make the injury *proximate* and *immediate* and *substantial*, that then he would have no right to claim damages for the change of grade of such a street, but in the case of properties situated as these properties are, and so affected by the change of grade that their ingress and egress to their houses is materially injured, partly destroyed, and where the injury is so obvious that it admits of comparatively easy calculation as to the extent of the diminution of the value of the property, I cannot doubt that such a case is covered by the constitution, and if any court is to hold that it is not, and that the plaintiffs are without remedy in such a case as this, it shall be some other court than this to decide it in that way.  It certainly has not been thus far decided in that way by any court.

" It must be obvious, I suppose, to any one who has heard the evidence in these cases, that where the access to property is materially damaged by the alteration of the grade of a lateral street adjoining that property, the damage, if it is proved, is just as much within the protection of the constitution as if the grade in front of the property was altered.  I cannot conceive that it makes any difference.  Of course, if property is situated comparatively remote from the scene of the alteration, or if it be in the immediate neighborhood of the alteration, and the inconvenience and loss is not obvious and material, the plaintiffs would have no just claims for compensation.  If they can go and come as they did before the alteration, without serious loss or inconvenience or damage to themselves, they have no right to complain, because the damages in such a case would not be within the purview of the constitution, which contemplates only proximate and material injury.

" [If you should find that the cutting down of Orthodox

street has materially impaired the facilities which the owners of these properties had before for getting into and out of their property, that Oxford street cannot afford them the facilities which they had before because the road between Oxford street in front of these houses and Orthodox street is so narrow that wagons and carts cannot conveniently enter and turn around, if you find that the property has been materially damaged by that, and that they now have only one way of egress from their properties, which is in itself a defective way, putting them to great inconvenience and affecting the value of the property, then I charge you that such an injury is within the protection of the constitution, and you should find for the plaintiffs for whatever damages the properties have actually sustained in consequence of the altered grade.] [1a]

" [There are six claimants of different properties fronting on Trenton avenue who claim that the destruction of their right of way, their mode of egress on to Orthodox street, has, in view of the limited accommodation which they have now by Oxford street, been a material loss to them in the depreciation of their properties. If you find that, you will find a verdict for these several plaintiffs for such an amount as will in your judgment,. as nearly as possible, represent the true amount of the depreciation of the several properties, of course not indulging in any extravagances or going outside of the facts of the case which bear upon the question of the loss, but giving the plaintiffs such sums respectively as in your opinion will actually represent the amount of depreciation of the several properties.] " [2a]

Defendant, as to the eastern group of properties, presented the following points:

" 1. The jury must find for the defendant." Refused. [4]

" 2. That the issue in the present case is the amount of the damage suffered by the change of grade of Orthodox street. Any injury subsequently effected by the change of grade of Margaret street, is outside the issue of the present actions." Refused. [5]

" 3. If the jury find that Trenton avenue is and has been for many years a public street, and that no change of grade or grading of that street has been effected, but that the alleged depreciation of plaintiffs' property has been occasioned by the grading or cutting down of another highway at a distance from

and not connected, save by Trenton avenue, with plaintiffs' property, the jury must find for defendant." Refused. [6]

Defendant, as to the western group, presented the following points:

" 1. The jury must find for defendant." Refused. [3a]

" 2. That if the jury find that Trenton avenue, between Orthodox and Oxford streets, is a public highway or was such until the change of grade in question, they must find for defendant." Refused. [4a]

" 3. That if the jury find that Trenton avenue between Orthodox street and Oxford street is a public highway, or was such until the change of grade in question, and if they find that no change of grade has been made in that part of the street in front of the properties in question, they must find for the defendant." Refused. [5a]

Verdicts and judgments for plaintiffs. Defendant appealed.

*Errors assigned* as to owners of eastern group were (1–2) rulings on evidence; (1–6) instructions; quoting instructions but not quoting the bills of exceptions; (7) in entering judgment for plaintiffs.

*Errors assigned* as to owners of western group were (1a–5a) instructions as above, quoting them; (6) in entering judgment for plaintiffs.

*E. Spencer Miller*, assistant city solicitor, *Chas. F. Warwick*, city solicitor, with him, for appellant, cited: Lawrence v. Phila., 154 Pa. 20; Black v. R. R., 58 Pa. 249; Cox v. R. R., 10 W. N. 552; Cox v. R. R., 11 W. N. 571; Heffner v. Com., 28 Pa. 108; Buck Mountain Coal Co. v. Lehigh C. & N. Co., 50 Pa. 91; Sparhawk v. Ry., 54 Pa. 401; Paul v. Carver, 24 Pa. 207; M'Gee's Ap., 114 Pa. 470; Gold v. Phila., 115 Pa. 184; Dooner v. R. R., 142 Pa. 36; Jones v. R. R., 151 Pa. 30; Hobson v. Phila., 155 Pa. 131; Blackwell v. R. R., 122 Mass. 1.

*Thomas Leaming*, for appellees, cited: Dobson v. Hohenadel, 148 Pa. 367; Transue v. Sell, 105 Pa. 604; R. R. v. Williams, 54 Pa. 103; Phillips v. Incline Plane Co., 153 Pa. 230; Geiger v. Norristown, 6 Montg. Co. R. 157; Jones v. R. R., 151 Pa. 30;

Butcher's Ice Co. v. Phila., 156 Pa. 54; 2 Dillon, Mun. Corp.,. § 730; Penna. Co. v. R. R., 151 Pa. 334; Act of May 16, 1891, P. L. 75.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 2, 1894:

This is one of sixteen cases which were tried in the court below on appeals from the report of viewers appointed to assess damages caused by changing the grade of Orthodox street in the city of Philadelphia. The plaintiffs respectively owned property fronting on the north side of Trenton avenue, a narrow street running nearly east and west along the northerly line of the New York division of the Pennsylvania railroad. Until recently, Orthodox street and another street named Margaret, about four hundred and fifty feet further east, both crossed said railroad at grade and nearly at right angles thereto. Owing to the vast increase in every form of street travel and the greatly increased business of the railroad company, these grade crossings became so exceedingly dangerous that councils deemed it necessary·to lower the grades of Orthodox and Margaret streets and thus carry them both under the railroad. This was accordingly done by lowering the grade of each to such an extent that the cut across Trenton avenue was about fifteen feet deep. That, of course, cut off all communication, except by pedestrians, with either of said streets, and that portion of Trenton avenue lying between them, and practically prevented ingress and egress, by vehicles, to and from that part of Trenton avenue west of the Orthodox street crossing. The respective properties of ten of the plaintiffs were located between said streets, and are referred to by counsel as the " eastern group."

The remaining six properties, located west of Orthodox street, are referred to as the " western group." For convenience's sake, the appeals relating to the respective lots of each group were tried by the same jury. In each case, however, separate verdicts were rendered in favor of the plaintiffs respectively.

It is not our purpose to refer to the testimony showing the extent to which the several properties were damaged by said change of grade. The proof is clear, positive and undisputed, except as to the amount of damages in each case. Speaking approximatively, the plaintiff's witnesses fixed the damages at

about fifty per cent of what was the market value of the property before the grades were so lowered as to practically cut off access to Trenton avenue. On the other hand, defendant's witnesses testified that the damage was about twenty-five per cent of said market value. The witnesses of course differed more or less as to what the market value was; but, aside from these discrepancies as to amounts, the consensus of the testimony on both sides is that all of the properties in question were injured by the change of grade to the extent of from about one fourth to one half of their previous market value. On the trial of each group of cases, the testimony bearing on the question of damages was fairly submitted to the jury by the learned president of the common pleas in a clear and able charge which appears to be entirely free from error. The respective verdicts in each class of cases were fully warranted by the evidence, so far at least as the proof of damages and the proximate cause thereof are concerned.

It is conceded that in making the improvements the city authorities acted in the line of their duty. In fact the public safety demanded that the grade crossings should be avoided, and the only feasible way of doing so was that which was adopted.

The respective claims of the plaintiffs to compensation were based on the constitutional provision that "municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements:"
. . . Const., art. 16, sect. 8. Defendant's contention was that this provision is inapplicable to any of the cases under consideration, because neither of the properties fronts or abuts on either of the streets, the grade of which was changed. This would indeed be a very narrow and unreasonable construction of the words above quoted, especially in view of the history and object of the constitutional provision. It was intended to provide against the great injustice that was continually resulting from the ruling of this court in O'Connor v. Pittsburgh, 18 Pa. 189, that "the constitutional provision for the case of private property taken for public use extends not to the case of property injured or destroyed." In connection with this statement

of the controlling principle in that case, Mr. Chief Justice GIB-
SON suggested that the omission might be supplied by ordinary
legislation ; but no such legislative action was ever taken.    It
was not until the adoption of our present constitution nearly
a quarter of a century thereafter, that an appropriate remedy
was provided in the form of the section above quoted.    In do-
ing this the people of the commonwealth recognized, in a prac-
tical way, the justice of compensating private property owners,
not only for property *taken*, but also for property *injured* or *de-
stroyed* by municipal and other corporations and individuals, of
the specified class, by the construction and enlargement of their
works, highways or improvements.    There is nothing in the
phraseology of the section that can be even tortured into a
limitation of its provisions to property fronting or abutting
on the particular work, highway or improvement, by the con-
struction or enlargement of which said property was injured
or destroyed.    The section in question cannot be thus narrowly
construed without reading into it words which are not in it and
were never intended to be there.

It was contended, on behalf of the city, that, inasmuch as
the properties of the several plaintiffs do not front on Ortho-
dox street, they " are not entitled to any damages ; that be-
cause Trenton avenue has not been changed, the plaintiffs, no
matter how much they have been injured, are not entitled to
damages for the alteration of the side street ; " and points for
charge substantially to that effect were submitted.    The learned
trial judge very properly refused to thus narrowly and unrea-
sonably construe the constitution.    He rightly conceded, how-
ever, " that where the street which undergoes an alteration is
not sufficiently near to the property of a citizen as to make the
injury *proximate* and *immediate* and *substantial*, he would have
no right to claim damages for change of grade of such a street ; "
and in connection therewith he appropriately added :  " In case
of properties situated as these properties are, and so affected by
the change of grade that their ingress and egress to and from
their houses is materially injured, partly destroyed, and where
the injury is so obvious that it admits of comparatively easy cal-
culation as to the extent of the diminution of the value of the
property, I cannot doubt that such a case is covered by the con-
stitution," etc.

The first three together with the fifth specifications of error to the respective judgments in the "eastern group" of cases, relate to the admission of testimony tending to show the damages resulting not merely from lowering the grade of Orthodox · street, but from changing the grades of both Orthodox and Margaret streets, and the effect of that testimony. This did the defendant no harm. The work on Margaret street was completed shortly after that on Orthodox, but before the trial. The record of the testimony shows the difficulty, if not the impossibility, of ascertaining with any degree of accuracy what proportion of the damage was done by each; and the plaintiff, with the approbation of the court, proceeded to show the damages done by the grading of both streets, and in connection therewith filed provisional releases of further claim for damages occasioned by the grading of Margaret street. This was entirely just and proper, and should not have been objected to by the city. If either party was more benefited than the other, by this mode of trial, it was the defendant. Upon the payment of these judgments the releases referred to will operate as an absolute bar to any claim by either of the plaintiffs for further damages resulting from the cutting down of Margaret street.

Further consideration of the questions involved in the specifications of error is quite unnecessary. The cases were carefully and ably tried by the learned president of the court below. The correctness of his rulings, so far as challenged by either of the specifications, is amply vindicated by his clear and concise charge in each group of cases respectively. The judgment in this, as well as the judgment in each of the other cases, is therefore affirmed.