# Girard Trust Company, Trustee, v. Raiguel, Appellant.

*Landlord and tenant—Lease—Termination—Interference by third party—Duty to pay rent.*

In an action to recover rent due under a written lease, it appeared that the parties, at the time the lease was executed, contemplated possible interference with the premises under eminent domain proceedings by reason of the construction of a bridge. The lease, which was from year to year, provided for its termination by either party upon ninety (90) days notice directed to the end of any term. It also provided that the lessor, at its option, could terminate the lease at any time upon ninety (90) days' notice to the lessee in the event of a change of grade in connection with the building of the bridge. No formal notice to vacate was ever given by the lessor. A change of grade was made by a third party, but no part of the demised premises was actually taken. The lessee, alleging that the change of grade interfered with its business, gave notice of his intention to terminate the tenancy, and vacated the premises before the end of the term. The notice was not directed to the end of the term but to an intermediate date.

The option to terminate the lease under the provisions relating to possible changes in conditions incident to the construction of the bridge was given to the lessor alone by terms of the lease, and judgment was properly entered against the lessee for the balance due for the remainder of the term.

The fact that defendant was injured in the enjoyment of its lease-hold by the act of a third party, for which plaintiff was not responsible, did not relieve it from its covenants under the lease.

Argued December 13, 1927. Appeal No. 389, October T., 1927, by defendant from judgment of C. P. No. 2, Philadelphia County, June T., 1927, No. 16221, in the case of Girard Trust Company, Trustee under the will of Moro Phillips, Deceased, v. M. O. Raiguel, Trading as M. O. Raiguel Company. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Case stated in an action for rent. Before GORDON, J.

The facts are stated in the opinion of the Superior Court.

Judgment, in the sum of $1,500, was entered for the plaintiff. Defendant appealed.

*Error assigned* was the judgment of the court.
*Charles L. Smyth,* for appellant.

*John Wintersteen,* and with him *A. H. Wintersteen,* for appellee.

OPINION BY CUNNINGHAM, J., March 2, 1928:

Plaintiff and defendant were lessor and lessee respectively in a lease dated February 20, 1924, for the premises at No. 150 N. Front Street in the City of Philadelphia, where defendant conducted its business, described in the lease as "the packing and storage of waste paper." The annual rental was $2,000, payable in equal monthly payments of $166.67 each, beginning on the date of the lease. On March 20, 1926, defendant vacated the premises; paid the rent to May 20, 1926, and refused to pay any further instalments thereof. Plaintiff brought suit to recover the rentals for the ensuing nine months, from May 20, 1926, to

February 20, 1927, aggregating $1,500, with interest from September 20, 1926, as the average due date. The parties agreed upon a case stated; the court below entered judgment thereon in favor of the plaintiff and defendant has appealed. The term of the lease is therein described as "for the term of One Year and thereafter from year to year until either party shall have given ninety (90) days' written notice to the other before the end of any term of an intention and desire to determine the tenancy," in which event the lease shall be deemed terminated at the end of the current year. The premises are located in the vicinity of the Delaware River Bridge and it was evidently contemplated by the parties that its construction might disturb existing conditions. They accordingly inserted the following as the concluding provision of the lease: "Notwithstanding the term as herein provided, it is further understood and agreed that should the demised premises be desired, a change of grade be made or other disturbance of existing conditions be proposed, in connection with the building of the Delaware River Bridge, that then and in that event the Lessee agrees to vacate the property at any time upon receipt of ninety days' notice in writing from Lessor so to do. At the expiration of ninety days after the service of such notice, this lease shall be considered as absolutely determined."

On July 11, 1924, plaintiff wrote defendant advising that plaintiff had received notice from the Delaware River Bridge Joint Commission "that the grade of Front Street will be changed." The letter continued "If this change in grade will in any way affect your use of the premises, we shall desire to serve notice terminating the lease. We have not yet had definite information as to the changes proposed. We shall be very glad to hear from you as speedily as possible." No reply was received to this letter and defendant continued to occupy the premises and pay the rent

during the remainder of the year 1924 and throughout the year 1925. No formal notice to vacate was ever given by plaintiff under the provisions of the last paragraph of the lease, nor was notice given by either party ninety days previous to February 20, 1926, of an intention to terminate the lease on that date. On February 6, 1926, however, defendant wrote plaintiff that "due to the very bad conditions which exist in front of premises 150 No. Front St. of which we are the tenants, it is our intention to vacate same at the very earliest possible date, or we might add, before we are forced to close our doors." After stating that the operations incident to the change of grade had rendered the street almost impassable and seriously interfered with defendant's business, the letter concluded: "Will you kindly see what you can do in relieving us from our present lease so that it will not cause us any more delay and expense of doing business." No reply was made by plaintiff to this letter and under date of February 11, 1926, defendant again wrote plaintiff saying "We are not yet in receipt of an answer to our letter of 6th inst. in which we gave you three months notice of our intention to vacate, and must insist that you get in touch with us relative thereto." Defendant added that it was practically impossible for it to receive or deliver goods, and it is agreed, in the case stated, that the change of grade had so greatly impaired the use of the premises "that it became practically impossible for the defendant to conduct his business." No reply was made by plaintiff to either of defendant's letters. On March 20, 1926, defendant vacated the premises and a tender of the key to plaintiff was made and refused. Defendant paid the three instalments of rent falling due on the 20th of February, March and April, 1926, respectively, but refused to pay any additional instalments. No part of the demised premises having been actually taken, the relationship of landlord and tenant was not

extinguished (Dyer v. Wightman, 66 Pa. 425; Uhler v. Cowen, 199 Pa. 316) and the term did not end until February 20, 1927, unless, as contended by the learned counsel for defendant, the letters, of which we have quoted the substance, amount to a notice, as of February 6, 1926, (the date of defendant's first letter), under the provisions of the last paragraph of the lease to vacate within ninety days. They contend that the letters should be construed as constituting a proposal by plaintiff and acceptance by defendant for a termination of the lease under the provisions of that paragraph at the expiration of ninety days from the date of the alleged acceptance. We cannot so read these letters. The parties made their own contract. Under its terms either could terminate the tenancy on the 20th of February of any year by a written notice given at least ninety days prior thereto, but the option to terminate under the provisions relating to possible changes in conditions incident to the construction of the bridge was given to plaintiff alone. Defendant did not reserve the right to terminate or to give any notice of any kind under that provision. Plaintiff's letter of July 11, 1924, was not a notice to vacate. It merely advised defendant that plaintiff had been informed by the bridge commission that there would be a change of grade and defendant was requested to inform plaintiff as speedily as possible whether the use of the premises would be affected. The most that can be said of it in defendant's favor is that it was a statement that if promptly advised by defendant that its business would be affected plaintiff would be desirous of exercising its option by giving a formal notice under the applicable provision of the lease. There is no intimation that this desire would continue indefinitely in the absence of information from defendant. Defendant made no reply to this request, and, although it might have terminated the lease on February 20,

1925, or on February 20, 1926, by notice given ninety days prior to either date, it took no such action. A year and a half later it wrote plaintiff the letter of February 6, 1926. This letter does not purport to be a reply to plaintiff's letter of July 11, 1924, and contains no reference to that communication. The defendant company simply announces its intention to vacate at the earliest possible date. It is significant that the letter closes with a request to plaintiff to see what it can do "in relieving us from our present lease." In its communication a few days later defendant refers to its first letter as its "three months' notice" of its intention to vacate. The only effective notice of an intention to vacate which defendant could have given under the lease, at the date of its first letter, would have been notice of its intention to vacate on February 20, 1927. Defendant has doubtless been injured in the enjoyment of its leasehold by the act of a third party, for which plaintiff was not responsible, but that fact does not relieve it from its covenants under the lease. That is the only question before us on this appeal.

The judgment is affirmed.