## McGarrity, Admr., Appellant, *v.* Commonwealth.

Argued January 16, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Russell Duane,* with him *Charles L. Smyth,* for appellant.

*Harold D. Saylor,* Deputy Attorney General, with him *David J. Smyth* and *Wm. A. Schnader,* Attorney General, for appellees.

OPINION BY MR. JUSTICE KEPHART, May 3, 1933:

Appellant's decedent, as tenant, leased property on North Front Street, Philadelphia, for one year with the privilege of renewing from year to year at his option. In building the Delaware River Bridge the Commission directed a change of grade in that street. The Commission's authority was conferred by the Act of July 9, 1919, P. L. 814. Plaintiff, who was engaged in a business requiring the use of trucks, averred in the court below that the new grade of the street, six feet below its former grade, prevented access to his premises; and as Front Street was the only means of access, the change destroyed the use of the premises. He was obliged to vacate his leasehold and remove his heavy machinery therefrom. The action to recover damages resulted in a verdict for defendant which the court below refused to disturb. This appeal followed.

While trial errors are alleged, it is not necessary to consider them, for section 3 of article III of the Constitution bars the way to plaintiff's recovery. This contention was not specifically raised at the trial and as judgment was for the Commonwealth, here as appellee, it is now raised by the Attorney General in his brief. The constitutional provision reads: "No bill, except general appropriation bills, shall be passed containing more than one subject, *which shall be clearly expressed in its title."* The part of the title to the Delaware River Bridge Act, which is pertinent to the question now under dis-

cussion, reads as follows: "......providing for the acquiring, [taking,] and condemnation of the real estate for the site and approaches thereof [i e., of the bridge,] and making an appropriation for the purposes of this act." As the body of the act is sufficiently comprehensive to cover claims for the consequential damages which plaintiff sustained, the question is, does the title give sufficient notice of the new liability that is to be imposed on the Commonwealth.

Section 10 of article I of the Constitution reads: "......nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." This provision applies only to the taking of land or interests therein.

Damage that is merely consequential upon a change in grade of a street does not constitute a taking of property within the constitutional clause cited. Damages for such taking are a matter of legislative grace and not of right: Hoffer v. Reading Co., 287 Pa. 120; Monongahela Navigation Co. v. Coons, 6 W. & S. 101; In re State Highway Route No. 72, 265 Pa. 369. When this grace is extended, it must clearly appear in the statute itself and notice of such a radical departure from the customary rule of law must be given in the title of the act.

In the Soldiers and Sailors Memorial Bridge Case, 308 Pa. 487, this court affirmed the action of the court below in setting aside the report of viewers allowing damages sustained by an abutting property owner by reason of the erection of the bridge, because the title of the act then in question gave no notice of the liability for consequential damages to be imposed on the Commonwealth. In that case the Act of July 18, 1919, P. L. 1049, provided for the erection of the memorial bridge in the City of Harrisburg. That part of its title pertinent to the question reads: "......providing for acquiring any property necessary by eminent domain;......

and making an appropriation to carry out the provisions of this act."

The titles in neither of these bridge acts give any notice that liability for consequential damages or such damages as were sustained in these respective cases, was to be imposed on the Commonwealth.

We said in the Soldiers and Sailors Memorial Bridge case, supra, that "The title provides for taking property by eminent domain. This contemplates an actual or direct taking of property and for it damages are provided. Consequential damages arise when property is not actually taken or entered but an injury to it occurs as the natural result of an act lawfully done by another. ..... An abutting owner could not recover consequential damages for a change of grade before the Constitution of 1874: Struthers v. Dunkirk, etc., Ry. Co., 87 Pa. 282. The present Constitution makes this possible [Chester Co. v. Bower, 117 Pa. 647; Appeal of County of Delaware, 119 Pa. 159]; but before the right may be exercised, the State must authorize it by some statute: Westmoreland C. & C. Co. v. Pub. Ser. Com., 294 Pa. 451, 458, and authorities there cited. The owner is without remedy unless the legislature provides one...... Claims for consequential damages are not within the class of damages comprehended by a taking of property under eminent domain...... The title of the act shows no attempt to impose liability for such damage on the State; ......such damages were entirely omitted from the title."

A statute can not authorize the taking of private property for public use *without just compensation;* otherwise the act would be unconstitutional: Article I, section 10 of the Constitution, supra. The Constitution does not bar the enactment of a statute authorizing the taking of such property with compensation, and if, in the taking, consequential damages result, the statute may provide for just compensation to be made for such damages. If a statute does provide for compensation for

consequential damages, the legislative intent so to do must be clearly set forth in the title of the act.

The reason for the rule is obvious. In addition to many others, the Commonwealth owns the highways of the State and constructs yearly thousands of miles of road. If it were to be liable for consequential damages, at times where acts so provide, in the thousands of instances where the grade of the road is changed through farm and other lands, the burden imposed on the Commonwealth would be enormous.

Reference is made to Phila. v. Com., 284 Pa. 225. But the title to this act was not there in question; if it had been it would have been immaterial, as the title covered the thing taken. There the City of Philadelphia owned piers 11 and 11½, and riparian rights, the latter always described and known as property and so fundamentally different from the rights here claimed that no discussion of that difference is necessary. These piers and rights were taken; this was a taking of physical property, not the creation of mere consequential damage. Furthermore, the act expressly dealt with *these piers.* The references to this case, from different pages in the opinion, have no application to the point here at issue.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

There is no doubt that the property of appellant's decedent, Raiguel, was substantially injured by the act complained of. His business of collecting, baling and shipping waste paper required convenient access to and from his leasehold property by trucks. The lowering by six feet of the grade of Front Street on which his property faced took away his sole access to his premises, thereby destroying the value of his leasehold. The work of changing the grade in front of his property began in February, 1926. In March, 1926, Raiguel was obliged by this change of grade to vacate his property and to remove his heavy machinery therefrom. His landlord

compelled him to pay the rental for the unexpired balance of the term, i. e., until February 20, 1927. The landlord's proceedings against Raiguel ended in a judgment against him, duly affirmed by the Superior Court. (See Girard Trust Co. et al. v. Raiguel, 93 Pa. Superior Ct. 123.)

After Raiguel instituted the present action, he died and his administrator was substituted as plaintiff. The trial resulted in a verdict for the defendant. Plaintiff moved for a new trial and for judgment n. o. v. The motions were denied and plaintiff appealed.

The majority hold that the Constitution bars plaintiff from recovery because the Delaware River Bridge Act of July 9, 1919, P. L. 814, providing, inter alia, for the acquiring, taking and condemnation of real estate for the site and approaches of the Delaware River Bridge, did not clearly express in its title a purpose to impose on the Commonwealth liability for consequential damages caused by the erection of this bridge and its approaches.

With this I cannot agree. That the legislature intended the Commonwealth to make compensation for damages such as were sustained by plaintiff is evident from section 2 of the act, where appears this sentence: "The term 'cost of construction,' as used in this act, shall include the cost of constructing the superstructure and substructure of the bridge and the approaches thereto, and the cost of acquisition of the ground for the site of said bridge and the approaches thereto, *including any franchises, easement, rights, or damages incident thereto or consequent upon the taking thereof.*" (Italics supplied.) That plaintiff's easement was "acquired" by the Commonwealth in constructing the approaches to the bridge is indisputable. "It is well settled that the right to the use and possession of a lot abutting on a public street is property and the right of access is equally property": Lewis on Eminent Domain, volume 1, page 56.

No question as to plaintiff's recovery being barred by the Constitution was raised in the court below. The City Solicitor in asking for binding instructions said: "The case rests on but one question, and that is a question of law as to the voluntary removal...... If there had been a legal proving of a damage, it is not a damage that is assessable, by reason of the fact that the evidence shows he voluntarily abandoned the property." The court submitted that question with what I view as erroneous instructions.

There is nothing in the statement of questions involved, in either appellant's or appellee's paper book, even remotely referring to an alleged defect in the Bridge Act's title on which the court's opinion in this case is now grounded. However, even if we assume that the question of the amplitude of the title of the Delaware River Bridge Act was squarely raised, I can find no warrant for holding the title inadequate. We have had other acts in this Commonwealth providing for the imposition on the body politic or on a subdivision thereof of liability for damages for change of a highway grade, and the titles to these acts have been no more ample than is the title now challenged.

In the Borough Act of May 14, 1915, P. L. 312, it is provided in chapter 6, article II, section 1, that "a borough may enter upon, appropriate, injure, or destroy private lands, property or material" "in the laying out, opening, widening,..... grading, or *changing the grades* or lines of streets, etc." Section 2 provides that "in case the compensation for damages or benefits accruing therefrom have not been agreed upon, any court of common pleas,......shall appoint three viewers" (Section 5) to "determine the damages for property taken, injured, or destroyed." This is the act's entire title: "An act providing a system of government for boroughs, and revising, amending, and consolidating the law relating to boroughs."

The Act of June 22, 1917, P. L. 627, likewise provides: "That all damages which shall be......sustained by any owner or tenant of lands......in any borough of this Commonwealth,.....through which pass, roads, streets, lanes or alleys injured by the laying out, opening, widenening,.....or grading of such roads,.....or the changing of the grades or lines thereof, whereby private lands, property or materials may or shall be injured, taken, or destroyed by any borough,.....shall be ascertained and assessed as provided in chapter six, article II of the Act" of May 14, 1915, known as the General Borough Act. The title of the Act of June 22, 1917, reads as follows: "An act providing for the ascertainment and assessment of damages and benefits in proceedings to lay out, open, widen, vacate, extend, grade, or changing the grade or lines, of streets, lanes, and alleys in boroughs; providing that this act shall apply to all proceedings when the damages shall not have been actually and finally ascertained; and repealing all acts, general, local, or special, conflicting therewith."

Neither the Act of 1915 nor the Act of 1917 gave any notice *in its title* that liability for consequential damages or such damages as were sustained was to be imposed upon a borough. Yet this court said in Blainesburg-West Brownsville Road, 293 Pa. 173, 178, 142 A. 319: "......the Borough Code and the Act of June 22, 1917, do confer the right of recovery [for consequential injuries] against such municipalities."

The Township Code of 1917, P. L. 896, confers on property owners in townships of the first class the right to recover damages for injuries to abutting property, caused by a change in the grade of roads, yet the title to the act says nothing about consequential injuries. This act was upheld. See Hanover Twp., 79 Pa. Superior Ct. 106.

The title of the Delaware River Bridge Act providing, inter alia, for "the acquiring, taking, and condemnation of the real estate for the site and approaches" of "a

bridge over the Delaware River, connecting the City of Philadelphia and the City of Camden......and making an appropriation for the purpose of this act" was and is, in my judgment, a sufficient notice of the contents of the act to acquaint persons interested in the subject-matter of the act with the fact that the Commonwealth was going to "acquire" and "condemn" whatever real estate (and that, of course includes easements) was necessary for the site and approaches of the bridge and was to pay for the same. If so, the title meets all of the requirements as to sufficiency of an act's title as laid down by this court in a long line of cases. In Snyder County, to use, v. Wagenseller, 262 Pa. 269, 105 A. 297, the present Chief Justice said as to the title of the act then in question: "The notice of the contents is sufficient to lead persons interested in the subject-matter to inquire into the body of the act to determine how, and under what conditions, the money shall be paid......" This court has frequently said: "The title to an act need not be an index to the contents." See Allegheny County Home's Case, 77 Pa. 77, and Graeff v. Schlottman et al., 287 Pa. 342, 135 A. 308.

In Carr v. Ætna Accident & Liability Co., 64 Pa. Superior Ct. 343, the question was whether or not the title of the Act of June 1, 1911, P. L. 607, sufficiently indicated the subject-matter of the act. Clause 3 of section 10 of the act provided: "No insurance company of any other state or foreign government shall be admitted and authorized to do business [in Pennsylvania] until:—.......  "Third.—It shall, by a duly executed instrument filed in his [i. e., the Insurance Commissioner's] office, constitute and appoint the Insurance Commissioner or his successor its true and lawful attorney, upon whom all lawful processes in any action, rule, order, or legal proceeding against it may be served; and therein shall agree that any lawful process against it, which may be served upon him as its said attorney, shall be of the same force and validity as if served on the company, and

that the authority thereof shall continue in force, irrevocable, so long as any liability of the company remains outstanding in this Commonwealth......"

The title of the act read as follows: "An act to establish an Insurance Department; authorizing the appointment of an Insurance Commissioner, and prescribing his powers and duties; also providing for the licensing, examination, and dissolution of insurance and surety companies and associations, and for the licensing and regulation of insurance agents and insurance brokers; also providing for the collection of fees, and prescribing penalties for the violation of any of the provisions of this act, and repealing all existing acts."

In that case the Superior Court held that the title of the act was adequate saying in an opinion by Judge KEPHART: "Mr. Justice STEWART, in Leinbach's Est., 241 Pa. 32 [88 A. 67], reviews many of the general principles controlling this question and states that "the purpose of the requirement was to reform a legislative practice which had theretofore prevailed of passing enactments under titles which, because of the generality of the words used therein, gave not even a hint of the subject legislated upon, and so far correct the practice that the title of the act thereafter should be so indicative of the subject of the act as to lead to inquiry and not mislead and entrap. See Com. v. Thomas, 248 Pa. 256 [93 A. 1019]. It has been stated that the evident purpose in placing these restrictions in the Constitution was to prevent fraud or deception...... Or, in other words, unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill, the act should not be declared as a violation of the Constitution by reason of its title offending section 3, of article III."

In the case now before us there is no "substantive matter entirely disconnected" with the bridge legislation which is "included in the folds" of the Delaware River Bridge Act. The title of the act gives ample notice of

the fact that the State in order to build the Delaware River Bridge and its approaches was empowered to acquire easements and other property rights, and that these property rights were to be paid for out of proceeds appropriated for that purpose.

See also Sugar Notch Boro., 192 Pa. 349, 355, 43 A. 985; Kaemmerling v. New Castle Twp. School Dist., 297 Pa. 44, 146 A. 144, and Com. v. Macelwee et al., 294 Pa. 569, 144 A. 751.

The instant case is distinguishable from the Soldiers and Sailors Memorial Bridge Case, 308 Pa. 487, 162 A. 309. In that case there is set forth in appellant's statement of questions involved this question: "Does the title of the Act of 1919, P. L. 1049, fairly give notice of an intention to impose liability upon the Commonwealth of Pennsylvania for 'damage to property taken, injured or destroyed' as the result of the erection and construction of the Soldiers and Sailors Memorial Bridge?" In the appellees' counterstatement of questions involved there is set forth the same question in different language. More important than this, it appears from "the statement of the case" filed in lieu of pleadings, that there was in the Memorial Bridge case no cutting down of the street immediately in front of the plaintiff's property but there was merely abutment of the bridge in the center of the street in front of plaintiff's property and the center line of this bridge was approximately the center of State Street, 120 feet wide. The bridge property had a width of 80 feet and the southern boundary line was approximately 20 feet from the property line of petitioner's land. The Dauphin County Court in the opinion filed in that case said: " 'Where a bridge is built within the lines of a street and does not overhang any of the land of the abutting property owner the element of damage is the exclusion of light and air from the property': Jones v. Erie & Wyoming Valley R. R. Co., 151 Pa. 30 [24 A. 134]. . . . . . . The construction of approaches to a bridge renders a municipal corporation liable to con-

sequential damages." There is nothing in the body of the Soldiers and Sailors Memorial Bridge Act of 1919, supra, that provides for compensation for the taking or damaging of easements. The word "eastments" nowhere appears in the act. The damage sustained by plaintiff in the Memorial Bridge case was clearly what is known in law as "consequential damage." None of plaintiff's property was taken away from him. No easement of ingress or egress was destroyed. In the case now before us the value of the leasehold of Raiguel was entirely destroyed because his easement of ingress and egress was, for all practicable purposes, destroyed.

This court interpreted this Delaware River Bridge Act of July 9, 1919, in Phila. v. Com., 284 Pa. 225, 130 A. 491, and held that the City of Philadelphia could recover damages from the Commonwealth under this very act, for the taking of the property interest the city had in (quoting from the second syllabus) "the permissive use of the stream, subject to the right of passage in the public, plus the right given by the legislature by various acts to extend piers under lease into tide water of the river, and to have the use for dock purposes of definitely ascertained areas of water," etc. In that case Mr. Justice KEPHART said, page 229: "Long before the effective legislation providing the ways and means to commence and finish the structure [the Delaware River Bridge], there existed along the banks of the Delaware valuable easements termed riparian rights. These incorporeal rights have been generally defined as the right of access to navigable rivers in front of the abutting owner's lot and adjacent thereto, and the right to make a landing wharf or pier for his own use or the use of the public, subject to the general rules imposed by the legislature for the rights of the public. [Citing cases]......
[page 230]. While the property in a riparian right may differ in kind and quality from that in a pier, it is the riparian right of the owner that legalizes the existence of the structure in place, and, through the combination

of the two, predicated on a license from the State, a value may be given the structures which they would not otherwise have. The license to build a wharf does not enlarge the easement or property in the riparian owner. ...... When the legislature passed the enabling Act of July 9, 1919, P. L. 814, it stated its express will in unmistakable language that, notwithstanding prior decisions, it recognized conditions existing, and, considering our precedent legislation, it was the State's desire to compensate the persons named in the act for injuries sustained in the taking of all species of property. ...... [Page 233.] The 'value' of the riparian rights and structures is a material part of the case."

If the Delaware River Bridge Act of 1919 was broad enough in its title and provisions to justify a verdict of $402,000 against the Commonwealth for the taking of property whose foundation was "the incorporeal right of access to a navigable river in front of the abutting owner's lot—as this court in the above case held it was— I cannot see why it is not broad enough to justify Raiguel's claim for compensation for taking his right of access to a public street. In each case there was the taking of an easement, and in the case just cited the city was compelled to pay for the taking of both the easement and the structures.

For the injuries done to Raiguel's property rights he was entitled to recover whether the injuries be characterized as "consequential" or "direct." Even conceding that they are the former, the Bridge Act provides for compensation for them and the title to the act is ample when tested by the decisions of this court. But I do not concede that the injuries were merely "consequential." There was in this case such a direct taking of Raiguel's property as to bring it within the prohibition of article I, section 10 of the Constitution, which declares: "Nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." As was recognized by this

court in the case last above cited a "taking" may consist of the invasion of a hereditament that is incorporeal as well as of one that is corporeal. An easement is just as much the subject of a taking as is a house and lot.

From the cases in this and other jurisdictions dealing with direct or consequential damages one can deduce the principle that consequential damages are unsubstantial damages, i. e., matters of mere annoyance. In the case of The Philadelphia and Trenton R. R. Co., 6 Wharton 25, this court in an opinion by Chief Justice GIBSON said: "The benefit of the constitutional prohibition [against taking private property for public use] extends not to matters of mere annoyance."

Blackstone in volume 3, section 218, of his Commentaries, says: "If I have a way, annexed to my estate, across another's land, and he obstructs me in the use of it, either by totally stopping it, or putting logs across it, or ploughing over it, it is a nuisance; for in the first case I cannot enjoy my right at all, and in the latter I cannot enjoy it so commodiously as I ought." Blackstone in the same section contrasts this kind of an actionable nuisance with one that is not actionable. As an illustration of the latter he says: "But depriving one of a mere matter of pleasure, as of a fine prospect by building a wall, or the like: this, as it abridges nothing really convenient or necessary, is no injury to the sufferer, and is therefore not an actionable nuisance."

In Erie City's App., Mill Creek Case, 297 Pa. 260, 147 A. 58, this court recognized the doctrine that even nonabutting property owners might sustain compensable injuries, or receive benefits that had to be paid for, by the taking or improvement of near-by lands under the power of eminent domain. In that case this court said: "This is, indeed, but a proper application of the rule, established under article XVI, section 8 of our Constitution, that where 'municipal and other corporations and individuals invested with the privilege of taking private property for public use,' obviously and

certainly cause proximate, immediate and substantial damages to nonabutting property by the 'construction or enlargement of their works, highways or improvements,' they must compensate such nonabutters to the extent thereof: Robbins v. Scranton, 217 Pa. 577 [66 A. 87]; Ogontz Avenue, 225 Pa. 126, [73 A. 1096]; Dieterich v. Phila., 248 Pa. 586, 590 [94 A. 274]."

Raiguel sustained "proximate, immediate and substantial damages" to his leasehold by the lowering of the grade in front of his property to a depth of six feet, thus destroying for all practical purposes all access to his property and making the premises worthless to him. If, in the construction of the approaches to the Delaware River Bridge, the Commonwealth had built a moat or a high wall around some person's property thereby cutting off all access to it, though without taking any part of the property itself, who could logically question the fact that there was in that case such a taking of private property as the Constitution forbids unless just compensation be first made or secured? "To deprive one of the use of his land is depriving him of his land; for, as Lord COKE long ago said, 'What is the land but the uses thereof?' ": SUTHERLAND, J., in People v. Kerr, 37 Barb. 357, 399; Co. Litt. 4 b.

It is true that there are cases in which this court has held that the mere change of grade in front of an abutting property was only an annoyance that did not amount to legal injury and therefore was not compensable by a corporation exercising the power of eminent domain unless some statute specifically provides for such compensation, but in none of these cases was access to a man's property taken away by the change of grade to the extent that Raiguel's access to his property was taken away from him. That a man's right of access to his property is a valuable right which cannot be taken away without just compensation has been repeatedly recognized.

In Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. R. Co., 240 Pa. 519, 524, 87 A. 968, it was held: "The easement in the street is appurtenant to the land of the lot owner and is therefore a private right in him. ...... 'The easement over the streets is appurtenant to every lot and......may be protected by appropriate legal process": O'Donnell v. Pittsburgh, 234 Pa. 401 [83 A. 314]. ...... Such a right is sometimes called an 'easement of access' which means the right of ingress and egress to and from the premises of the lot owners. It is a property right appurtenant to the land which cannot be impaired or taken away without compensation." See Walsh v. Scranton, 23 Pa. Superior Ct. 276.

In Mellor, Exr., et al. v. City of Phila., 160 Pa. 614, 28 A. 991, it appears that the plaintiffs' houses fronted on a street running along the line of a railroad. Two other streets crossed at grade the railroad, and the street upon which the houses were situated. To avoid the grade crossings the city depressed the two cross streets fifteen feet, so that these streets could go under the railroad. Access to plaintiffs' houses by vehicle was thus entirely cut off. It was held that plaintiffs were entitled to recover damages from the city for the depreciation in the value of their houses.

In recent cases this court has construed the changes of grade incident to the construction of a grade crossing and a bridge as not being a change of grade within the meaning of those decisions which did not allow consequential damages for change of grade, but have construed such changes of grade to be incident to the construction of the bridge or grade crossing. In Knoll v. Harborcreek Twp., 86 Pa. Superior Ct. 423, that court held that "the grading of the road in front of plaintiff's property was a part of the scheme involved in the abolition of the grade crossings and necessary to its accomplishment. As in the erection of a bridge......so in the construction of a subway, it is incomplete until every-

thing necessary for use and included in the project has been applied and every such appliance is part of it."

In Westmoreland Chemical & Color Co. v. Pub. Ser. Com., 294 Pa. 451, 462, 144 A. 407, this court, speaking through Mr. Justice KEPHART, said: "Are the approaches part of the bridge construction, so that its cost should be included as part of the damage? This should not be open to question. The approaches are a necessary part of the bridge: Com. v. Loomis, 128 Pa. 174 [18 A. 335]."

The prevailing modern American view on this question of the right of an individual to be compensated for a substantial abridgement of his private property by a public or private corporation exercising the right of eminent domain, is well expressed by the United States Supreme Court in an opinion by Mr. Justice MILLER, in the case of Pumpelly v. Green Bay Co., 80 U. S. 166, 179: "There are numerous authorities to sustain the doctrine that a serious interruption to the common and necessary use of property may be, in the language of Mr. Angell, in his work on watercourses [section 465 a] equivalent to the taking of it, and that under the constitutional provisions it is not necessary that the land should be absolutely taken." The fifth headnote to that case reads as follows: "It is not necessary that property should be absolutely *taken*, in the narrowest sense of that word, to bring the case within the protection of this constitutional provision. There may be such serious interruption to the common and necessary use of property as will be equivalent to a taking, within the meaning of the Constitution."

In the leading case of Eaton v. Boston, Concord & Montreal R. R., 51 N. H. 504, 12 American Reports 147, it is aptly said: "An easement is property, and is within the protection of the constitutional prohibition now under consideration. If the defendants have acquired this easement, it cannot be taken from them, even for the public use, without compensation. ...... It is said

that a landowner is not entitled to compensation where the damage is merely 'consequential.' The use of this term, 'consequential damage' 'prolongs the dispute,' and 'introduces an equivocation which is fatal to any hope of a clear settlement.' It means both damage which is so remote as not to be actionable, and damage which is actionable. Sometimes it is used to denote damage which, though actionable, does not follow immediately, in point of time, upon the doing of the act complained of; what ERLE, C. J., aptly terms 'consequential damage to the actionable degree': Brand v. H. & C. R. Co., Law Rep., 2 Q. B. 223, 249. It is thus used to signify damage which is recoverable at common law in an action of case, as contradistinguished from an action of trespass. On the other hand, it is used to denote a damage which is so remote a consequence of an act that the law affords no remedy to recover it. ...... When, then, it is said that a landowner is not entitled to compensation for 'consequential damage.' it is impossible either to affirm or deny the correctness of the statement until we know in what sense the phrase 'consequential damage' is used. ...... The question whether the injury constitutes a 'taking of property' must depend on its effect upon proprietary rights, not on the length of time necessary to produce that effect. If a man's entire farm is permanently submerged, is the damage to him any less because the submerging was only the 'consequential' result of another's act? ...... The form of action in which the remedy must be sought cannot be decisive of the question whether the injury falls within the constitutional prohibition."

"The city might so build a bridge or open a street or excavate a canal along or upon a lot, only appropriating a small portion of it, or perhaps none of the land itself, and yet entirely destroy the value of the property for all purposes": Alexander v. Milwaukee, 16 Wisconsin 247, 253.

Whether the injuries to Raiguel's property are characterized as "consequential" or held to constitute a "direct taking" of a property right is immaterial. He is in either event entitled to recover damages, for what was taken from him has all the legal qualities of property. For consequential damages the Bridge Act fully provides and the title of the act is ample; for damages for a direct taking for public use of any property—and an easement *is* property—the Constitution guarantees compensation.

I would reverse this case with a venire for I believe the trial judge erred in his instructions to the jury. In substance he charged that Raiguel "abandoned any claim" for damages by vacating the premises. Nothing in the evidence supports any charge of abandonment. Raiguel was obliged to vacate the premises for he had been deprived of the use of them by having access to them taken away by the deep excavation in front. Furthermore, the court erred in instructing the jury that plaintiff's damages could not be ascertained until after the completion of the work in front of his premises. This instruction was contrary to the decisions of this court. See O'Brien v. Penna., etc., R. R. Co., 119 Pa. 184, 13 A. 74. There were also erroneous instructions on the measure of damages, and error committed in the exclusion of testimony of a real estate expert who qualified as being familiar with real estate values generally in the neighborhood in question but whose offer to testify as to the rental value of Raiguel's property in February, 1926, was improperly excluded, the court saying: "As a real estate expert nobody questions his opinion, but as a leasehold expert, I do not believe he has had the proper experience to qualify as an expert. He is a buyer and a seller, not a renter." (See Hope v. Phila. & Western R. R. Co., 211 Pa. 401, 403, 60 A. 996.)

My conclusions are: plaintiff sustained legal injuries that were compensable under the law; his case was submitted to the jury with erroneous instructions; there should be a new trial.